PEOPLE v HELLIS

Docket Nos. 169398, 169707. Submitted February 21, 1995, at Lansing. Decided June 27, 1995, at 9:05 A.M. Leave to appeal denied, 450 Mich App —.

Stephen B. Hellis pleaded guilty in the Oakland Circuit Court, Hilda R. Gage, J., of three counts of possession with intent to deliver marijuana and one count of possession with intent to deliver 50 or more grams, but less than 225 grams, of cocaine, second offense. The pleas were offered by the defendant on the condition that his right to raise on appeal the question of the constitutionality of the search of his new residence be preserved. The defendant was sentenced to terms of imprisonment of six months to eight years with respect to each of the three marijuana convictions, those sentences to be served concurrently with each other but consecutively to the sentence of four to forty years' imprisonment for the cocaine conviction. Although the cocaine conviction was subject to a statutory minimum sentence of ten years, the court found that there were substantial and compelling reasons to depart from the statutory minimum sentence. The defendant appealed, raising as issues whether the criminal convictions violated his constitutional right not to be placed in jeopardy twice for the same offense because he had been subject to a prior forfeiture action stemming from the same incidents and whether the search of his new residence, which resulted in the seizure of substantial amounts of drugs and other items relating to these criminal charges, was improper because the warrant was secured without an adequate showing of probable cause. The prosecution appealed, raising the issue whether the trial court abused its discretion in departing from the statutory minimum sentence. The appeals were consolidated.

The Court of Appeals held:

1. The double jeopardy protection of the Fifth Amendment and the excessive fines protection of the Eighth Amendment of

REFERENCES

Am Jur 2d, Criminal Law §§ 251, 615.

See ALR Index under Double Jeopardy; Fines, Penalties, and Forfeitures.

the United States Constitution are triggered by the imposition of both civil and criminal sanctions arising out of the same activity only when, in contemplation of the criminal sanctions, the related civil forfeiture or tax proceedings impose additional penalties such that the total penalty is disproportionate to the offense committed. The defendant's civil forfeiture of cash and other items totaling approximately $36,000 is proportionate to the criminal sanctions and does not constitute, on the facts of this case, a constitutionally prohibited additional or successive punishment. The forfeiture is not so punitive in either purpose or effect as to negate the legislative intention that such forfeiture be regarded as remedial or civil rather than punitive.

2. The defendant has standing to raise on appeal the question of the propriety of the search of his new residence. Although the prosecution originally objected to the defendant's desire to offer a conditional plea, the record establishes adequate subsequent assent by the prosecution to make the conditional plea valid.

3. The contraband discovered during the lawful search of the defendant's vehicle, when coupled with the information concerning the fact that the contraband was found in boxes that were being moved by the defendant to his new residence and the information concerning the existence of more boxes that could be observed through the windows of the defendant's new residence, was sufficient to establish probable cause to search the new residence. Accordingly, because the search of the new residence was pursuant to a properly secured and executed search warrant, the trial court reached the right result in refusing to suppress as evidence the items discovered during the search of the defendant's new residence.

4. The trial court properly considered postarrest factors in determining whether there were substantial and compelling reasons for departing from the mandatory minimum sentence. The court's finding of a drastic change in the defendant's lifestyle after his arrest was not clear error and was based on reasons that were objective and verifiable. Accordingly, the record does not support a finding of abuse of discretion by the court in departing from the statutory sentence.

Affirmed.

O'CONNELL, J., in the lead opinion, stated that, with respect to the search of the defendant's new residence, the trial court properly found that although probable cause to search the defendant's new residence had not been shown at the time the search warrant was issued and the search of the residence was not made pursuant to a valid search warrant, the fruits of that

search were not subject to the exclusionary rule. Absent a showing of a compelling state interest, the Michigan and United States Constitutions should be treated as affording the same protections. The exclusionary rule is primarily a remedy for constitutional violations by the executive and, thus, is designed to deter illegal police conduct rather than to correct judicial error. Accordingly, where, as here, there exists no illegal police conduct, application of the exclusionary rule is not an appropriate remedy.

JANSEN, J., concurring in parts I and III of Judge O'CONNELL's opinion and in the result reached in part II, stated that Michigan has not adopted, and should not adopt, the good-faith exception to the exclusionary rule.

However, the trial court reached the right result, albeit for the wrong reason, by refusing to suppress the items seized pursuant to the warrant.

HOLBROOK, JR., P.J., concurring in parts I and III of Judge O'CONNELL's opinion and with Judge JANSEN's belief that the defendant's conviction should be affirmed because the search warrant was supported by probable cause, wrote separately to state that there was probable cause to issue the search warrant, the warrant was valid, the exclusionary rule was not at issue, and, accordingly, there is no need to consider whether Michigan has or should have a good-faith exception to the exclusionary rule.

CONSTITUTIONAL LAW — DOUBLE JEOPARDY — EXCESSIVE FINES — CIVIL FORFEITURE PROCEEDINGS.

The double jeopardy and excessive fines protections of the United States Constitution are triggered by the imposition of both civil and criminal sanctions arising out of the same activity only when, in contemplation of the criminal sanctions, the related civil forfeiture or tax proceedings impose additional penalties such that the total penalty is disproportionate to the offense committed (US Const, Ams VI, VIII).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Robert C. Williams,* Assistant Prosecuting Attorney, for the people.

*Richard M. Lustig,* for the defendant on appeal.

Before: HOLBROOK, JR., P.J., and JANSEN and O'CONNELL, JJ.

O'CONNELL, J. Defendant appeals as of right[1] his convictions by conditional guilty plea, *People v Reid,* 420 Mich 326; 362 NW2d 655 (1984), of three counts of possession with intent to deliver marijuana, MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c), and one count of possession with intent to deliver 50 grams or more, but less than 225 grams, of cocaine, second offense, MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). We affirm the convictions.

The Oakland prosecutor appeals as of right, MCL 770.12; MSA 28.1109; *People v Vancil,* 186 Mich App 665, 666; 465 NW2d 49 (1991), the leniency of the sentence imposed for the cocaine conviction. The trial court found what it believed to be "compelling and substantial reasons" warranting a "departure sentence" pursuant to MCL 333.7401(4); MSA 14.15(7401)(4). We affirm the sentence.

On December 5, 1992, defendant was pulled over by a South Lyon police officer for a minor traffic violation. When defendant rolled down the window of his car, the approaching officer detected a strong odor of marijuana. Subsequent searches of defendant and the car revealed hashish, hallucinogenic mushrooms, cocaine, $2,100 in cash, over 130 "baggies" containing marijuana, a triple beam scale, and other incriminating items. Defendant was placed under arrest for possession of marijuana.

Some of the items in the car were in cardboard boxes. Defendant admitted he was in the process of moving. On December 6, 1992, a search warrant for his condominium was issued and executed. The police executing the warrant discovered two one-

[1] Defendant pleaded guilty well before the December 24, 1994, effective date of amendments of Const 1963, art 1, § 20 that eliminated the right of appeal in guilty plea situations.

pound bricks of marijuana, over 180 grams of cocaine, $35,000 in cash, a small amount of hashish, fifteen silver bars, and other items.

Soon after, a forfeiture action was commenced pursuant to MCL 333.7521; MSA 14.15(7521). That proceeding, distinct from the criminal proceedings currently appealed, culminated in entry of a consent judgment.

Two criminal prosecutions were initiated. First, in lower court no. 92-120205-FH, defendant was charged with possession with intent to deliver 50 grams or more, but less than 225 grams, of cocaine, second offense, MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii), and possession with intent to deliver marijuana, MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c). In lower court no. 92-120206-FH, defendant was charged with two counts of possession with intent to deliver marijuana.[2]

Defendant ultimately pleaded guilty to all four charges. For each of the three convictions of possession with intent to deliver marijuana, defendant was sentenced to six months' to eight years' imprisonment, to be served concurrently with each other but consecutively to the sentence for possession with intent to deliver cocaine. With respect to the cocaine conviction, defendant was sentenced to four to forty years' imprisonment. Although defendant was subject to a mandatory minimum sentence of ten years, MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii), which was doubled pursuant to MCL 333.7413(2); MSA 14.15(7413)(2), the trial court set forth what it believed to be substantial

[2] Note that the criminal complaints were filed out of order. No. 92-120205-FH concerns the events of December 6, 1992, that is, the warrant-based search of the condominium. No. 92-120206-FH concerns the events of December 5, 1992, that is, the search without a warrant of the automobile. This transposition was the source of a great deal of confusion in the lower court.

and compelling reasons for departing from the statutory minimum sentence, MCL 333.7401(4); MSA 14.15(7401)(4).

Defendant appeals, presenting two arguments. First, he contends that his right against being placed twice in jeopardy was violated where he was criminally prosecuted after being subjected to forfeiture proceedings that were allegedly criminal rather than civil in nature.

Second, defendant argues that the evidence upon which his convictions in 92-120205-FH were predicated should have been barred from being used against him because the search warrant by which that evidence was obtained was invalid. The trial court, although holding that the search warrant was issued without the prerequisite showing of probable cause, found that there exists a good-faith exception to the Michigan Constitution's search and seizure protections and refused to suppress the evidence.

We address each argument in turn.

I

Defendant first contends that the criminal prosecutions initiated against him placed him in double jeopardy because he had already been the subject of a forfeiture action stemming from the same incidents. His guilty pleas do not waive his double jeopardy rights. *People v Johnson,* 396 Mich 424, 440; 240 NW2d 729 (1976), cert den 429 US 951 (1976).

The United States Constitution prohibits placing a defendant twice in jeopardy for a single offense, US Const, Am V; *Helvering v Mitchell,* 303 US 391, 399; 58 S Ct 630; 82 L Ed 917 (1938), a

protection that extends to state prosecutions.[3] *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969). However, while successive or multiple criminal punishments are prohibited by the Fifth Amendment, a defendant may be subjected to both criminal and civil sanctions for the same act. *United States v Halper,* 490 US 435, 440; 109 S Ct 1892; 104 L Ed 2d 487 (1989).

The United States Supreme Court in three recent cases has altered hitherto accepted notions of the effect of monetary penalties for purposes of double jeopardy-based constitutional analysis. In *Halper, supra,* the Court held that a civil penalty for filing a false claim with the government, after a criminal conviction for the same act, violated double jeopardy protections where the amount of the fine bore no rational relationship to the government's loss. In that case, a medical laboratory company manager submitted sixty-five false claims for reimbursement under the federal Medicare program. Each false claim inflated an otherwise proper $3 demand for reimbursement to $12, resulting in overpayment of a total of $585.

The manager was indicted and convicted of sixty-five counts of submitting false claims in violation of 18 USC 287. He was sentenced to two years' imprisonment and fined $5,000. Subsequently, the federal government brought a civil action under the False Claims Act, 31 USC 3729-3731 (later amended), which in its then-applicable version imposed upon a person knowingly making a false statement so as to induce approval of a false claim a civil penalty of $2,000, plus an amount equal to twice the amount of damages

---

[3] On appeal, defendant makes no mention of Michigan's constitutional prohibition against placing a defendant twice in jeopardy, apparently preferring to bring his argument only in the context of the United States Constitution. Therefore, the issue not being raised, we do not address Const 1963, art 1, § 15.

sustained by the government, together with the costs of the civil action.

The federal district court considering the civil action granted summary judgment for the government on the issue of liability, but declined to allow the government the statutorily authorized recovery of more than $130,000, because that amount would bear no rational relationship to the government's actual losses of $585 plus its costs of investigating and prosecuting the case. Instead, the court awarded judgment for the government in the amount of $16,000, which it felt was adequate to make the government whole. On rehearing, the district court augmented that award by $1,170, the remaining statutory remedy of twice the government's actual losses, and allowed the government to tax its actual costs.

The Supreme Court unanimously held that the district court was correct in holding that the disparity between the $130,000-plus sanction called for by the False Claims Act and the district court's $16,000 approximation of the government's actual losses, costs, or expenses was sufficiently disproportionate that the sanction constituted a second punishment in violation of the double jeopardy clause. However, it remanded the case to the district court to permit the government to demonstrate that the trial court's assessment of the government's injuries was erroneous.

In *Austin v United States,* 509 US —; 113 S Ct 2801; 125 L Ed 2d 488 (1993), the Eighth Amendment's excessive fines clause was held to apply to drug-related forfeitures of property. Notwithstanding that the legislation authorizing the in rem forfeiture action, 21 USC 881(a)(4) and (a)(7), declared the proceedings to be civil, the Court held that for constitutional purposes, the forfeiture constituted payment to the sovereign as punishment

for some offense and did not serve a solely reme-
dial purpose, hence invoking the protection of the
excessive fines clause of the Eighth Amendment.
The Court remanded the case for consideration of
the question whether the forfeiture at issue was
constitutionally excessive.

The original forfeiture included the mobile home
and automobile body shop of an individual con-
victed of four counts of violating South Dakota's
drug laws, for which the state criminal court had
sentenced the defendant to eight years' imprison-
ment. The Court further held that while its deci-
sion did not foreclose the possibility that the con-
nection between the forfeited property and the
offense might be relevant, it in no way intended to
inhibit the lower courts from considering other
factors in determining the excessiveness of the
subsequent forfeiture penalty.

Finally, in *Montana Dep't of Revenue v Kurth
Ranch,* 511 US —; 114 S Ct 1937; 128 L Ed 2d 767
(1994), the Court found that Montana's assessment
of a tax on possession and storage of dangerous
drugs, in proceedings separate from state criminal
prosecutions of drug charges, violated the Fifth
Amendment's double jeopardy protection, as ap-
plied to the states by way of the Fourteenth
Amendment. In that case, after state criminal
proceedings resulted in plea agreements with re-
spect to various criminal charges that resulted in
the imposition of sentence, the Montana Depart-
ment of Revenue in separate proceedings applied a
state drug tax statute in an effort to collect almost
$900,000 in taxes on marijuana-related items, in-
terest, and penalties. The constitutionality of the
assessment was challenged in bankruptcy proceed-
ings.

The United States Supreme Court held that
Montana's assessment of its tax on possession of

dangerous drugs, in proceedings separate from the
state criminal proceedings involving the conspira-
tors, violated the Fifth Amendment's double jeop-
ardy protection against successive punishments for
the same offense. In so holding, the Court again
looked to the substance of the tax and held that it
could only be characterized as punishment, irre-
spective of any label applied thereto by the Mon-
tana Legislature. Further, the Court ruled that the
tax proceeding that the state initiated was the
functional equivalent of a successive criminal pros-
ecution that placed the conspirators in jeopardy a
second time for the same offense.

Following the *Kurth Ranch* decision, an increas-
ingly popular tactic of those criminally charged
with violating state and federal drug laws and
correlatively subjected to forfeiture proceedings is
to concede in the forfeiture proceedings at the
earliest opportunity and, thereafter, seek to avoid
criminal sanctions by moving to dismiss pending
criminal charges on double jeopardy grounds. A
Massachusetts federal district court concluded it
could not avoid that result by staying the forfei-
ture proceedings, absent statutory authority to
hold such proceedings in abeyance pending the
outcome of related criminal prosecutions. *United
States v Parcel of Land Located at 167 Woodland
Road, Newton, Massachusetts,* 63 USLW 2403 (D
Mass, 1994). In the Eleventh Circuit, however, it
has been suggested that contemporaneously insti-
tuted criminal prosecutions and civil forfeiture
proceedings constitute a "single coordinated prose-
cution" for double jeopardy purposes, thereby
avoiding the prohibition against successive prose-
cutions.[4] *United States v One Single Family Resi-*

---

[4] The Legislature should combine the forfeiture and the criminal
proceeding into one statute and make the forfeiture proceeding part
of the sentencing process. The civil forfeiture should only be insti-

*dence Located at 18755 North Bay Road,* 13 F3d 1493 (CA 11, 1994); *United States v Smith,* 63 USLW 2481 (ND Ala, 1995).

A common thread running through the above trilogy of United States Supreme Court decisions is that double jeopardy protection under the Fifth Amendment or excessive fines protection under the Eighth Amendment are triggered only when, in contemplation of other criminal sanctions, related forfeiture or tax proceedings impose additional penalties such that the total penalty is disproportionate to the offense committed. In the case at bar, the forfeiture proceedings were resolved by a consent judgment issued on April 12, 1993, by the Oakland Circuit Court. Defendant forfeited $27,590.84 and fifteen silver bars.[5] Defendant retained $9,600 in cash and a 1984 Ford Tempo automobile, as well as a $4,400 bond filed pursuant to MCL 333.7523(1)(c); MSA 14.15(7523) (1)(c).

Defendant's out-of-pocket loss of approximately $36,000 should be contrasted with the applicable criminal penalties, which in light of defendant's second offender status, which doubles the applicable penalties, MCL 333.7413(2); MSA 14.15(7413) (2), involve up to eight years' imprisonment and a $4,000 fine or both for each conviction of possession with intent to deliver marijuana, a possible aggregate fine of $24,000. The cocaine conviction is punishable by imprisonment only, although lesser cocaine offenses are punishable by up to a $25,000 fine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a) (iv). Because defendant's criminal punishments did

tuted if no criminal proceedings are filed or the defendant is found not guilty.

[5] The silver bars were described as weighing one hundred troy ounces each. At current market prices (between $5.80 and $6.50 per troy ounce), the bars represented an approximate additional cash value of $9,000.

not include fine components, which at least with respect to the marijuana convictions were otherwise authorized, and in consideration of the costs of investigation and prosecution, the forfeiture imposed is proportionate to the criminal sanctions and does not constitute, on the facts of this case, an additional or successive punishment in violation of double jeopardy principles. On the facts of this case, the forfeiture is not so punitive in either purpose or effect as to negate the legislative intention that such forfeiture be regarded as remedial or civil and not punitive. *United States v Ward,* 448 US 242, 248; 100 S Ct 2636; 65 L Ed 2d 742 (1980).

II

Defendant's remaining contention is that the fruits of the search of his condominium pursuant to warrant were inadmissible in case No. 92-120205-FH pursuant to the exclusionary rule. A threshold issue concerns whether defendant has standing to raise this issue.

At the outset of this opinion, this Court noted that defendant pleaded guilty conditionally. A valid conditional plea, however, requires the concurrence not only of the defendant and the trial court, but the prosecutor as well. *People v Reid, supra,* 420 Mich 337. If the prosecutor does not agree affirmatively to a conditional plea and makes that position clear to the defendant before entry of the plea, the plea may be treated as unconditional; however, if the prosecutor does not affirmatively object, but, although present, remains essentially silent, the defendant is entitled to an opportunity either to withdraw the plea or to stand on the plea as an unconditional plea. *People v McFadden,* 433 Mich 868 (1989), rev'g 170 Mich App 640; 428 NW2d 729 (1988).

In this case, initially defense counsel indicated the defendant's desire to offer a conditional plea of guilty, to which the prosecutor objected. However, after the trial court and defense counsel sorted matters out somewhat, the following colloquy occurred:

> *The Court:* All right, did the prosecutor want to be heard at all?
>
> *Mr. Roe [Assistant Prosecutor]:* No[.] I think that my position with regard to the court's taking the plea was clarified by the court.

Pursuant to *McFadden, supra,* this constitutes sufficient assent by the prosecutor to make the conditional plea valid under *Reid* and thereby to preserve defendant's standing to litigate the search and seizure question on appeal to this Court.

With regard to defendant's motion to suppress, the trial court ruled expressly that no probable cause existed to issue the search warrant.[6] The trial court, however, declined to suppress the evidence obtained during execution of the warrant because it found that the police officers who carried out the command of the warrant had acted in reasonable reliance on a warrant issued by a neutral and detached magistrate. In short, the trial court invoked the good-faith exception of *United States v Leon,* 468 US 897, 919-921; 104 S Ct 3405; 82 L Ed 2d 677 (1984).

Defendant contends that the good-faith exception has been rejected as being part of Michigan jurisprudence in such decisions as *People v Hill,* 192 Mich App 54, 56; 480 NW2d 594 (1991), and *People v Jackson,* 180 Mich App 339, 346; 446

---

[6] The prosecutor has not appealed this ruling, and we intimate no view regarding the issue.

NW2d 891 (1989). If defendant's contention is correct, inasmuch as *People v Hill, supra,* was decided after November 1, 1990, it would be binding on the present panel pursuant to Administrative Order No. 1994-4.

However, *Hill* is distinguishable and does not control the case before this Court.

In *Hill,* the police searched the defendant, without an applicable warrant, and discovered a $50 bill that was marked in a manner that identified it as having been involved in a controlled drug purchase. The police lacked probable cause to conduct this search. The Court in *Hill, supra* at 56, stated:

> And had the illegal search and seizure not taken place, the police would not have had probable cause to obtain a warrant for the search of defendant's residence.

Accordingly, there was a *primary* police illegality that tainted all other information subsequently obtained.

In *Hill,* the original police illegality tainted the subsequent warrants, and, therefore, the good-faith exception properly could not be invoked. In our case, no police illegality existed.

When this Court's decision in *Hill* is understood in its proper factual context, the propriety of the good-faith exception in relation to Michigan's search and seizure jurisprudence becomes an open question, notwithstanding numerous pre-November 1, 1990, decisions, cited in *Jackson, supra,* that reject the doctrine.[7] None of those cases considered recent Michigan Supreme Court decisions that undercut their supporting rationale.

In *People v Beavers,* 393 Mich 554; 227 NW2d

[7] The panel's decision in *People v Paladino,* 204 Mich App 505; 516 NW2d 113 (1994), is consistent with the results of this case.

511 (1975), the Michigan Supreme Court held that Const 1963, art 1, § 11 should be construed to provide greater protection against electronic monitoring without a warrant than that required by US Const, Am IV. Revisiting that decision in *People v Collins,* 438 Mich 8; 475 NW2d 684 (1991), the Court overruled *Beavers,* finding no justification in the phraseology, history, or intent of Const 1963, art 1, § 11 to justify affording greater protection for the defendant, or broader scope to the exclusionary rule, than that provided under the Fourth Amendment.

The decision in *Collins* was presaged by the Michigan Supreme Court's decision in *People v Perlos,* 436 Mich 305, 313, n 7; 462 NW2d 310 (1990), where the Court described the reach of Const 1963, art 1, § 11 vis-à-vis the Fourth Amendment in light of post-*Beavers* decisions, as follows:

> Unless there is a compelling reason to afford greater protection under the Michigan Constitution, the Michigan and federal provisions will be treated as affording the same protections. *People v Smith,* 420 Mich 1; 360 NW2d 841 (1984); *People v Nash,* 418 Mich 196; 341 NW2d 439 (1983). In this case, we find no compelling reason to afford greater protection under the Michigan' Constitution.

The purpose of the exclusionary rule is to deter improper police conduct. The exclusionary rule is thus principally a remedy for constitutional violations by the executive branch. Although the judicial branch is governed by the Fourth Amendment, which establishes the probable cause standard for issuance of a warrant, judicial error is the basis for the good-faith exception established in

*United States v Leon, supra,* and *Massachusetts v Sheppard,* 468 US 981; 104 S Ct 3424; 82 L Ed 2d 737 (1984).

For purposes of the Michigan Constitution, one way of viewing this dichotomy is to recognize that to apply the exclusionary rule to judicial error, as opposed to executive error, is tantamount to granting the judiciary, by design or accident, the power to immunize lawbreakers from answering for their crimes. Yet it is well-established that the powers of pardon and commutation in this state are exclusively executive functions, and judicial usurpation of or intrusion into this protected sphere is unconstitutional. *People v Freleigh,* 334 Mich 306; 54 NW2d 599 (1952); *In re Jenkins,* 438 Mich 364; 475 NW2d 279 (1991); Const 1963, art 3, § 2. The rationale of the good-faith exception, therefore, is that where exclusion of the evidence will not deter future misconduct by the police, the exclusionary rule is not properly applied. *Arizona v Evans,* 514 US —; 115 S Ct 1185; 131 L Ed 2d 34 (1995).

Historically, the exclusionary rule was designed to deter illegal police misconduct, not to penalize the public for the mistakes committed by the judicial branch of government. The language and history of Const 1963, art 1, § 11 provide no justification for rejecting application of the good-faith exception to the exclusionary rule where, as here, the police presented their information in support of a determination of probable cause, wholly untainted by any improper police conduct, to a neutral and detached magistrate, a member of the judicial branch. The trial court correctly held that the police properly could rely on the warrant issued in this case. Accordingly, defendant's conviction for possession with intent to deliver fifty grams or more of cocaine is affirmed.

III

Finally, the prosecution argues that the trial court's imposition of a sentence of four to forty years' imprisonment for the conviction of delivery of 50 grams or more, but less than 225 grams, of cocaine is disproportionately lenient where the statutorily mandated minimum sentence was ten years. A sentencing court may depart from a mandatory mimimum sentence where substantial and compelling reasons exist justifying such a departure. MCL 333.7401(4); MSA 14.15(7401)(4). Our Supreme Court has recently clarified that for a reason to be considered substantial and compelling, it must also be objective and verifiable, *People v Fields,* 448 Mich 58, 68; 528 NW2d 176 (1995).

In the present case, the trial court departed from the statutory minimum sentence primarily because of what it described as "the drastic change in [defendant's] lifestyle" after his arrest. This "drastic change" included an eighteen-day inpatient drug treatment program, weekly outpatient sessions, extensive community service, and defendant's apparent abstention from controlled substances. Because these findings by the trial court were objectively made and verified, we find no clear error in these factual findings. *Id.,* p 77.

After reviewing the factual findings of the sentencing court for clear error, as we have done, we must determine whether the lower court abused its discretion in imposing the sentence that it did. *Id.,* p 78. *Fields* explicitly authorizes consideration of postarrest factors such as defendant's activities in the present case. *Id.,* p 77. While we would question to some extent the weight ascribed by the trial court to defendant's ostensible transformation (defendant's history of drug-related criminal activ-

ity dated back some fourteen years, his postrefor-
mation period some ten months), our review is not
de novo. Accordingly, we decline to find an abuse
of discretion where the trial court's justifications
were based on objective and verifiable factors and
represented a legitimate exercise of its discretion.

Affirmed.

JANSEN, J. *(concurring).* I concur in parts I and
III of Judge O'CONNELL's opinion. I concur in the
result only in part II because I do not believe that
any so-called "good-faith" exception to the exclu-
sionary rule should be adopted in this state. How-
ever, I would affirm defendant's conviction on the
basis that the search warrant was supported suffi-
ciently by probable cause.

I

A

With respect to Judge O'CONNELL's attempt to
adopt a good-faith exception to the exclusionary
rule, I do not agree. It is well established that
there is no good-faith exception to the exclusionary
rule in Michigan, and I would adhere to that
precedent.

In *People v Bloyd,* 416 Mich 538, 556; 331 NW2d
447 (1982), three of the six justices participating in
that case declined to adopt the good-faith excep-
tion to the exclusionary rule. Three of the remain-
ing justices concurred in the result, but for a
different reason. Although *Bloyd* does not establish
a rule of law by stare decisis because a majority of
justices sitting in the case did not agree that the
good-faith exception does not apply, *People v An-
derson,* 389 Mich 155, 170; 205 NW2d 461 (1973),
*Bloyd* presents a starting point for this Court.

In *People v David,* 119 Mich App 289, 297-299;

326 NW2d 485 (1982), this Court refused to recognize a good-faith exception to the exclusionary rule. Next, in *People v Sellars,* 153 Mich App 22, 28; 394 NW2d 133 (1986), this Court refused to adopt the good-faith exception to the exclusionary rule, noting that our Supreme Court did not do so in *People v Sherbine,* 421 Mich 502; 364 NW2d 658 (1984), which was decided after the United States Supreme Court had adopted a good-faith exception to the exclusionary rule in *United States v Leon,* 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984).

Likewise, in *People v Sundling,* 153 Mich App 277, 289; 395 NW2d 308 (1986), this Court held that it was error for the trial court to apply a good-faith exception to the exclusionary rule. This Court set forth compelling reasons not to adopt a good-faith exception and specifically questioned the utility of the good-faith exception "in light of the dearth of evidence indicating that application of the exclusionary rule substantially hinders effective and efficient law enforcement." *Id.,* p 292. Next, in *People v Tanis,* 153 Mich App 806, 813; 396 NW2d 544 (1986), this Court held that it would "not adopt a rule that, where the police act in good faith and reasonable reliance on a search warrant which is issued in violation of a statute, the exclusionary rule will not be applied."

In *People v Jackson,* 180 Mich App 339, 346; 446 NW2d 891 (1989), this Court held that Michigan courts have declined to adopt a good-faith exception to the exclusionary rule, finding greater protection afforded a defendant under the state constitution. In *People v Hill,* 192 Mich App 54, 56; 480 NW2d 594 (1991), this Court again declined to recognize and adopt a good-faith exception to the search warrant requirement where the police acted pursuant to a search warrant they believed

was valid. Finally, in *People v Paladino,* 204 Mich
App 505, 507; 516 NW2d 113 (1994), this Court
rejected the application of the good-faith rule
where the police acted on a warrant that was later
ruled to be invalid. Although the panel in *Pala-
dino* stated that it was following *Hill* only because
it was required to do so under Administrative
Order No. 1990-6, there is no appellate court opin-
ion in this state that has adopted a good-faith
exception to the exclusionary rule.

Judge O'CONNELL's attempt to distinguish *Hill*
from the present case is a distinction without a
difference and appears to be an attempt merely to
diverge from the well-established precedent in this
state that there is no good-faith exception to the
exclusionary rule. In *David, Sundling, Tanis, Jack-
son,* and *Paladino,* the police relied on search
warrants that were later found to be invalid. Yet,
in all those cases, the Court of Appeals still held
that it would not adopt a good-faith exception to
the exclusionary rule despite the fact that there
was no primary police illegality. Further, in *Hill,*
the police first acted illegally because they did not
have probable cause to arrest the defendant with-
out a warrant. After arresting defendant and
searching him, the police were able to obtain a
search warrant for the defendant's house. Because
the initial arrest and search were illegal, the
search warrant was invalid because probable cause
to issue the warrant was based on the illegal
arrest and search. However, this Court held that it
would not recognize and apply a good-faith excep-
tion to the search warrant requirement where the
police acted on a search warrant they believed was
valid. *Hill, supra,* p 56.

Thus, the attempt to distinguish primary police
illegality from secondary police illegality (acting
upon what the police believe is a valid warrant) is

simply a distinction without a difference in Michigan jurisprudence. This is so because this Court in cases decided in this state after the United States Supreme Court adopted a good-faith exception to the exclusionary rule continued not to adopt any good-faith exception to the exclusionary rule where the police acted on a warrant later found to be invalid. *Tanis, supra,* · pp 812-813; *Sundling, supra,* pp 289-292; *Jackson, supra,* pp 345-346; *Paladino, supra,* p 507.

Further, recent Michigan Supreme Court decisions do not undercut the supporting rationale of those decisions decided before *Hill.* In *Sitz v Dep't of State Police,* 443 Mich 744, 752; 506 NW2d 209 (1993), our Supreme Court made clear that Const 1963, art 1, § 11 is to be construed as providing the same protection as that secured by the Fourth Amendment unless there is a compelling reason to impose a different interpretation. Such compelling reasons were succinctly set forth in *David, supra,* pp 297-298, and they are repeated here:

Such a holding [that the exclusionary rule need not be applied where the police act unconstitutionally but in good faith] would, in effect, remove the probable cause requirement from the Fourth Amendment. A "good-faith" exception to the exclusionary rule would insulate the magistrate's decision to grant a search warrant from appellate review. In every case where a constitutionally infirm search warrant was issued, the prosecution could reasonably claim that the police acted in good faith. In effect, the constitutional language that all warrants be issued only on a showing of probable cause would become a nullity.

Furthermore, adoption of a "good-faith" standard would remove the incentive for police officers to find out what sort of police conduct constitutes an unreasonable invasion of privacy. On a police force, efficiency in obtaining convictions is re-

warded so recognition of a good-faith exception to the warrant requirement would encourage police officers to remain ignorant of the law in order to garner more evidence and obtain more convictions. The end result, increased illegal police activity, is the very problem that the exclusionary rule is designed to avert.

Further, the exclusionary rule has a longer history in this state than the federal exclusionary rule. "Our commitment to the protection of liberty was further demonstrated when the Supreme Court of Michigan adopted an exclusionary rule in 1919, forty-two years before it was mandated by federal law. *People v Marxhausen,* 204 Mich 559; 171 NW 557 (1919)." *Sitz, supra,* pp 775-776. Moreover, beginning in 1982, this Court has consistently declined to adopt a good-faith exception to the exclusionary rule.

Accordingly, there is a compelling reason to impose a different interpretation under the Michigan Constitution and not adopt a good-faith exception to the exclusionary rule in this state. Therefore, I would find that the trial court clearly erred in applying a good-faith exception to the exclusionary rule, because I am left with a definite and firm conviction that a mistake has been made. *People v Faucett,* 442 Mich 153, 170; 499 NW2d 764 (1993); *People v Lyons (On Remand),* 203 Mich App 465, 468; 513 NW2d 170 (1994). There is no authority to adopt a good-faith exception to the exclusionary rule under Michigan jurisprudence, and the trial court erred in doing so.

B

Although the trial court clearly erred in applying a good-faith exception to the exclusionary rule, Judge HOLBROOK, JR., and I would still affirm the

trial court's decision to deny the motion to suppress on other grounds. *In re People v Jory,* 443 Mich 403, 425; 505 NW2d 228 (1993). We would find that the search warrant was supported adequately by probable cause.

The search warrant and the underlying affidavit are to be read in a common-sense and realistic manner. The reviewing court must ensure that there is a substantial basis for the magistrate's conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *People v Russo,* 439 Mich 584, 604; 487 NW2d 698 (1992).

The affiant of the affidavit, Lieutenant LaFond of the South Lyon Police Department, stated that marijuana, hashish, cocaine, and psilocylin were located at 775 McMunn Street in the City of South Lyon. This was described as a two-story condominium unit. Probable cause to believe that the contraband was in the condominium unit was based on the following facts. On January 5, 1992, South Lyon police officer Baaki was in his patrol car when he observed a 1984 Ford traveling south on Pontiac Trail. The officer detected an excessively loud muffler and pulled over defendant. Upon making contact with defendant, Baaki noticed a strong odor of burnt marijuana. Defendant admitted to the officer that he recently had been with friends who were smoking marijuana. Defendant then consented to Baaki searching the passenger compartment of the car. However, defendant specifically asked Baaki not to disturb the boxes that were in the car, because he was in the process of moving and the boxes contained his personal property. Another officer arrived and found a marijuana cigarette under the driver's seat. Defendant was then arrested and found to be in possession of over $2,000 in cash. The car was impounded and

searched, and 1489 grams of marijuana, 70.5 grams of hashish, three grams of cocaine, 7.5 grams of psilocylin, a triple beam scale, and sixteen bars of 1600-ounce silver were recovered.

After being advised of his *Miranda* rights, defendant gave a statement and told the officers that he was in the process of moving and that he was completing his last trip to the condominium when he was stopped. Defendant stated that some of his property already had been moved to the condominium and that the condominium was his final destination. On January 6, Lt. LaFond went to the condominium located at 775 McMunn and saw moving boxes on the floor, a television that was turned on, and a porch light that was on.

Contrary to the trial court's ruling, I find that the sworn affidavit sufficiently sets forth facts to establish probable cause to believe that contraband would be found in the condominium unit located at 775 McMunn. In this case, the nexus between defendant, his residence, and the contraband was established by the facts set forth in the affidavit. Here, there was a necessary connection because a great deal of contraband was found in defendant's car, defendant admitted that he was in the process of moving, defendant further stated that the condominium unit was his final destination and that he already had moved some of his personal property there, and the police officer saw boxes in the condominium unit. Thus, there was probable cause to believe that contraband would be found in defendant's residence. *People v Landt,* 439 Mich 870 (1991); *People v Brake,* 208 Mich App 233, 239-242; 527 NW2d 56 (1994).

Accordingly, the affidavit gave the magistrate reasonable grounds to believe that defendant was engaged in illegal drug activity and that a search of his residence probably would uncover contra-

band. Thus, probable cause to search defendant's residence existed at the time that the warrant was issued. The trial court should have denied defendant's motion to suppress on this basis below.

Because there is a majority agreeing to the result on all the issues presented, defendant's convictions and sentences are affirmed.

HOLBROOK, JR., P.J. *(concurring).* I concur in parts I and III of Judge O'CONNELL's opinion. With regard to part II, I concur with Judge JANSEN that defendant's conviction should be affirmed because the search warrant was supported by probable cause. I write separately to state that, because the search warrant was supported by probable cause, we need not reach the issue whether a good-faith exception to the exclusionary rule should be adopted in this state. Nonetheless, I have expressed my opinion regarding that issue previously, in *People v Tanis,* 153 Mich App 806, 813; 396 NW2d 544 (1986), and I reaffirm that stance today. Accordingly, I too would affirm defendant's convictions and sentences.