PEOPLE v GARVIN

Docket No. 203354. Submitted September 2, 1998, at Detroit. Decided
April 9, 1999, at 9:10 A.M. Leave to appeal denied, 461 Mich ___.

Demar Garvin was charged in the 50th District Court, William Wat-
terman, J., with possession with intent to deliver less than fifty
grams of cocaine, second offense, possession with intent to deliver
marijuana, second offense, being a felon in possession of a firearm,
and two counts of possession of a firearm during the commission
of a felony. Codefendant Stanley Burkett was charged with carrying
a concealed weapon. The court dismissed the charges against the
defendants after ordering that the evidence must be suppressed.
The court's decision with regard to Garvin was based on the fact
that, although Garvin was either given a copy of the search warrant
regarding the premises where Garvin and the evidence were found
or a copy was left at the residence, Garvin was not given a copy of
the affidavit that had been attached to the warrant and that stated
the probable cause for the issuance of the warrant. The court sup-
pressed evidence of a pistol found in Burkett's vehicle, which had
been parked in the driveway of the residence where the search
warrant was executed. The vehicle was searched without a warrant
after the police discovered Garvin and Burkett in the residence and
found thousands of dollars in cash on Burkett. The court found
that the police were not justified in searching the vehicle. The pros-
ecution appealed, and the Oakland Circuit Court, Deborah G.
Tyner, J., affirmed. The prosecution appealed by leave granted.

The Court of Appeals *held*:

1. The district court erred in suppressing the evidence with
regard to defendant Garvin on the basis of the failure to provide a
copy of the affidavit. The circuit court erred in upholding the dis-
trict court's order.

2. Where a supporting affidavit is used in lieu of a statement of
probable cause in a warrant, as authorized by MCL 780.654; MSA
28.1259(4), a copy of the affidavit becomes part of the "copy of the
warrant" that must be provided or left pursuant to MCL 780.655;
MSA 28.1259(5). However, here, the failure of law enforcement
officers to comply with the statutory requirement to attach a copy
of the affidavit to the copy of the warrant provided or left does not
require suppression of the evidence seized pursuant to the warrant

because the requirement is merely procedural and Garvin ultimately has the opportunity to challenge the probable cause supporting the warrant.

3. An automobile may be searched without a warrant under circumstances that would not justify the search of a home, provided there is probable cause to believe that the automobile contains articles that the officers are entitled to seize. Whether probable cause exists depends on the information known to the officers at the time of the search.

4. The police may lawfully search an automobile without a warrant where they have probable cause to believe that the automobile contains contraband, even if the police have the time and opportunity to obtain a search warrant.

5. The district court erred in finding that the police lacked probable cause to search Burkett's vehicle, and the circuit court erred in affirming that order. The fact that Burkett was in the residence and had a large amount of money, combined with Burkett's attempt to flee, provided the police with probable cause to believe that he was a drug dealer connected in some way with a criminal operation that was involved with the illicit drugs found in the residence. Evidence establishing probable cause that a person is involved in drug dealing and has driven an automobile to a house in which a large amount of illicit drugs have been found ordinarily provides probable cause to support a search of that automobile for illicit drugs. Although no drugs were found in Burkett's automobile, the police were justified in seizing the pistol found there under the plain view doctrine.

6. The opinions and orders of the district court and the circuit court must be reversed and the matter must be remanded to the district court for further proceedings.

Reversed and remanded.

HOLBROOK, JR., P.J., dissenting from the determination that sufficient probable cause existed to justify the search of Burkett's vehicle, stated that the relevant case law does not sanction the search without a warrant of the vehicle, which was parked, locked, inaccessible to Burkett, and in a private residential driveway when it was searched. The evidence does not establish the requisite probable cause to support the search of the vehicle. The orders and opinions of the district and circuit courts should be affirmed with regard to the suppression of the evidence against Burkett and the dismissal of the charges against him.

1. SEARCHES AND SEIZURES — SEARCH WARRANTS — SUPPORTING AFFIDAVITS.

    A copy of a supporting affidavit that is used in lieu of a statement of probable cause in a search warrant becomes part of the "copy of the warrant" that must be provided or left pursuant to MCL 780.655; MSA 28.1259(5) (MCL 780.654; MSA 28.1259[4]).

2. SEARCHES AND SEIZURES — SEARCH WARRANTS — SUPPORTING AFFIDAVITS.

    The failure of law enforcement officers to comply with the statutory requirement that a copy of a supporting affidavit used in lieu of a statement of probable cause in a search warrant must be attached to a warrant provided or left does not require suppression of evidence seized pursuant to the warrant (MCL 780.654, 780.655; MSA 28.1259[4]; 28.1259[5]).

3. SEARCHES AND SEIZURES — AUTOMOBILES — PROBABLE CAUSE.

    An automobile may be searched without a warrant under circumstances that would not justify the search of a home, provided there is probable cause to believe that it contains articles that police officers are entitled to seize; whether probable cause exists depends on the information known to the officers at the time; where the officers have probable cause, they may search the vehicle without a warrant even if they have the time and opportunity to obtain a search warrant.

4. SEARCHES AND SEIZURES — PROBABLE CAUSE.

    There must be a substantial basis for concluding that a search will uncover evidence of wrongdoing to provide probable cause for a search; the determination whether probable cause exists to support a search, including a search of an automobile without a warrant, should be made in a commonsense manner in light of the totality of the circumstances.

5. SEARCHES AND SEIZURES — PROBABLE CAUSE — AUTOMOBILES.

    Evidence establishing probable cause to believe that a person is involved in drug dealing and has driven an automobile to a house in which a large amount of illicit drugs is found ordinarily provides probable cause to support a search of the automobile for illicit drugs.

6. SEARCHES AND SEIZURES — PROBABLE CAUSE.

    Probable cause requires only the probability, and not a prima facie showing, of criminal activity to support a search; probable cause does not require as its basis a conclusion that it is overwhelmingly likely that a search will uncover contraband or other evidence or that it is more likely than not that a search will turn up the type of item suspected.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Prosecuting Attorney, *Richard H. Browne*, Chief, Appellate Division, and *Kathryn G. Barnes*, Assistant Prosecuting Attorney, for the people.

*James Daniel Shanahan*, for Demar Garvin.

*Enid Livingston*, for Stanley Burkett.

Before: HOLBROOK, JR., P.J., and MARKEY and WHITBECK, JJ.

WHITBECK, J. Defendant Demar Garvin was charged with possession with intent to deliver less than fifty grams of cocaine, second offense, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), MCL 333.7413(2); MSA 14.15(7413)(2), possession with intent to deliver marijuana, second offense, MCL 333.7401(2)(d); MSA 14.15(7401)(2)(d), MCL 333.7413; MSA 14.15(7413), two counts of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), and one count of being a felon in possession of a firearm, MCL 750.224f; MSA 28.421(6). Defendant Stanley Burkett was charged with carrying a concealed weapon, MCL 750.227; MSA 28.424. The prosecution appeals by leave granted from the opinion and order of the circuit court that affirmed an opinion and order of the district court that (a) suppressed evidence against defendant Garvin on the basis that the police did not provide Garvin a copy of the affidavit that had been attached to the copy of a search warrant authorizing the search of a residence that was provided to Garvin and (b) suppressed evidence against defendant Burkett on the basis that the police were not justified in searching

his vehicle. We reverse and remand for further proceedings consistent with this opinion.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 18, 1993, at about 10:15 P.M., the Pontiac Police Department executed a search warrant at 605 Wyoming in Pontiac. Before the execution of the search warrant, Officer Phillip Sailor was assigned to "pre-raid surveillance" of the residence. Officer Sailor arrived at about 9:45 P.M. and thereafter saw a black Ford Bronco, that apparently was owned by Burkett, pull into the driveway. Officer Sailor then saw Burkett leave the vehicle and enter the residence.

When the police executed the search warrant, Garvin and Burkett were inside the residence. After the police entered the residence, Burkett ran from them, but was pursued by three police officers and was eventually secured. Sergeant James Webb indicated that over $3,500 in cash was recovered from Burkett's person. However, Officer Brian Flye apparently indicated that he found over $2,200 in Burkett's pants pockets.[1] In any event, it is undisputed that the police found thousands of dollars in cash on Burkett's person.

Officer Charles Herring, Jr., found $765 in cash in Garvin's right front pocket, a pager in Garvin's left front pocket, and a book with "a list of names and

---

[1] Read literally, the transcript of the preliminary examination at which Officer Flye testified reflects that he testified that he found $19 in Burkett's left front pants pocket, $200 in his right front pants pocket and $128 in his rear right pants pocket. However, Burkett's brief on appeal indicates that he was found with at least $2,200 on his person. It appears that the $19 reference reflects a misstatement or inaccurate transcription of what should have been stated as $1,900.

amounts inside" that Officer Herring described as a "tally book" in Garvin's back pocket.

During the course of the search of the interior of the residence, the police found and seized several incriminating items. The police found a .45 caliber automatic handgun, loaded with seven live rounds of ammunition, protruding from an uncovered heat register. In the basement, the police found a triple-beam scale and a cardboard box that contained a small plastic bag with about thirty-eight grams of crack cocaine on top of a dryer. The police also found six small plastic bags that appeared to have residue on them. Inside the dryer, the police found $19,645 in cash. At the bottom of the basement stairs, the police found 1 to 1¼ pounds of marijuana. Officer Michael Story testified that, in the living room, he "found a Perry Drug paper bag with some names of known drug dealers to us or to the Crime Control Section [of the Pontiac Police Department], written on it with phone numbers and amounts." The police also found suspected cocaine residue in the microwave oven that was in the kitchen. In one of the bedrooms of the residence, the police found about one-half of a gram of what seemed to be powdered cocaine on a dresser and about another 1½ grams of suspected cocaine on an armoire. Inside the dresser, the police found $860 in cash and a box of bullets. In another bedroom, the police found two small plastic bags containing marijuana on a shelf in a closet. In various locations, the police found utility bills with Garvin's name and the address of the residence.[2]

---

[2] Officer Story testified that he was "[p]retty much" familiar with the value of crack cocaine on the streets of Pontiac and that "depending on how it was packaged and cut" the amount of crack cocaine seized in this

Eventually, Officer Vallard Gross searched the Bronco in which Burkett had arrived and found a fully loaded .380 caliber semiautomatic pistol, with its serial numbers scratched off, under the driver's seat.

After the police completed the search of the house, they either provided a copy of the search warrant to Garvin or left it at the residence, but—critically from the point of view of Garvin's argument—detached the copy of the affidavit in support of the search warrant from the copy of the warrant but did not provide the copy of the affidavit to Garvin or leave it at the residence. In granting Garvin's motion to suppress the incriminating evidence against him that was found inside the house, the district court ordered the evidence suppressed on the basis that the police did not provide or leave a copy of the affidavit supporting the search warrant with the copy of the warrant. With regard to its decision to grant Burkett's motion to suppress the gun found inside Burkett's vehicle, the district court held that the search of the vehicle was improper, including on the grounds that the vehicle was not included in the scope of the search warrant issued for the residence and that there was no independent basis for probable cause to search the vehicle.

## II. STANDARD OF REVIEW

This Court reviews for clear error the trial court's findings of historical fact in deciding a motion to suppress evidence, but we review de novo the trial court's ultimate decision regarding a motion to suppress. *People v Goforth*, 222 Mich App 306, 310 & n 4;

---

search "could be worth up to five thousand dollars." He indicated that the marijuana found in the basement would be worth about $2,000.

564 NW2d 526 (1997). Also, "[t]his Court reviews a question of statutory interpretation de novo as an issue of law." *People v Seeburger*, 225 Mich App 385, 391; 571 NW2d 724 (1997).

### III. DEFENDANT GARVIN AND THE FAILURE TO PROVIDE A COPY OF THE AFFIDAVIT

The prosecution argues that the district court erred in suppressing evidence on the basis that the police failed to provide or leave a copy of the affidavit with a copy of the search warrant after they seized evidence from Garvin's house pursuant to MCL 780.654; MSA 28.1259(4) and MCL 780.655; MSA 28.1259(5). We agree.

MCL 780.654; MSA 28.1259(4) provides:

> A search warrant shall be directed to the sheriff or any peace officer, commanding such officer to search the house, building or other location or place, where any property or other thing for which he is required to search is believed to be concealed. Each warrant shall designate and describe the house or building or other location or place to be searched and the property or thing to be seized. *The warrant shall also state the grounds or the probable or reasonable cause for its issuance, or in lieu thereof, a copy of the affidavit may be attached thereto.* [Emphasis supplied].

In addition, MCL 780.655; MSA 28.1259(5) states in relevant part:

> When an officer in the execution of a search warrant finds any property or seizes any of the other things for which a search warrant is allowed by this act, the officer, in the presence of the person from whose possession or premises the property or thing was taken, if present, or in the presence of at least 1 other person, shall make a complete and accurate tabulation of the property and things so seized. *The officer taking property or other things under*

> *the warrant shall forthwith give to the person from whom*
> *or from whose premises the property was taken a copy of*
> *the warrant and shall give to the person a copy of the tabu-*
> *lation upon completion, or shall leave a copy of the war-*
> *rant and tabulation at the place from which the property*
> *or thing was taken.* [Emphasis supplied.]

"The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. Statutory language should be construed reasonably, keeping in mind the purpose of the statute. The first criterion in determining intent is the specific language of the statute." *USAA Ins Co v Houston General Ins Co*, 220 Mich App 386, 389; 559 NW2d 98 (1996) (citations omitted).

MCL 780.654; MSA 28.1259(4) states that a copy of the affidavit "may" be attached to the warrant in lieu of an explanation of probable cause on the face of the warrant. MCL 780.655; MSA 28.1259(5) mandates that the police provide a copy of the warrant with a tabulation of items seized to the person from whom or from whose "premises" or "place" the items were taken or leave a copy of the warrant and tabulation at the place of the search. However, because the Legislature did not plainly express whether a copy of the affidavit necessarily becomes part of the "copy of the warrant" that must be provided or left pursuant to MCL 780.655; MSA 28.1259(5), it is not clear from the plain language of these statutory sections whether a copy of the affidavit must be left with a copy of the warrant after the search has been completed. Nevertheless, given that the Legislature has phrased as a general requirement that a warrant state the probable cause (or other grounds) for its issuance and that the copy of the warrant provided or left by law enforce-

ment officers should include a statement of the probable cause for its issuance, we conclude that where a supporting affidavit is used in lieu of a statement of probable cause in the warrant, as authorized by MCL 780.654; MSA 28.1259(4), then a copy of the affidavit becomes part of the "copy of the warrant" that must be provided or left pursuant to MCL 780.655; MSA 28.1259(5). Thus, the police officers in this case should not have detached the copy of the affidavit from the copy of the warrant that they either provided to Garvin or left at the residence.

However, a failure by law enforcement officers to comply with the statutory requirement to attach a copy of the affidavit to the copy of the warrant provided or left does not require suppression of evidence seized pursuant to the warrant. In *People v Pipok (After Remand)*, 191 Mich App 669, 673; 479 NW2d 359 (1991), this Court stated:

> In this case, there is an affidavit setting forth the facts on which the federal magistrate's determination of probable cause was based. Defendants do not argue that the affidavit was insufficient to establish probable cause, and they do not articulate any prejudice that resulted from the noncompliance with [MCL 780.654; MSA 28.1259(4)]. Furthermore, defendants were furnished copies of the affidavit before the preliminary examinations and had the opportunity at those hearings to challenge probable cause supporting the search warrant. We therefore conclude that the failure of the warrant to state the grounds for issuance or to have the supporting affidavit attached did not abrogate the purpose of the statute and that the error was one of procedure not requiring suppression of the evidence.

Thus, it follows that the failure of the police to provide or leave a copy of the affidavit as part of the copy of the warrant does not provide a basis for suppression of evidence, because Garvin ultimately has

the opportunity to challenge probable cause support-
ing the warrant and because the requirement is
merely procedural. Accordingly, the district court
erred in suppressing the evidence against Garvin on
the basis that the police failed to leave a copy of the
affidavit with the search warrant after conducting
their search and the circuit court erred in affirming
that decision.

We note that the circuit court stated that "[a] signif-
icant distinguishing factor of *Pipok* is that the search
warrant had been issued pursuant to federal law
which did not require that the affidavit be attached."
The circuit court erred in regarding *Pipok* as materi-
ally distinguishable. It is true that *Pipok* involved a
search warrant issued pursuant to federal law. *Pipok*,
*supra* at 671. However, because *Pipok* involved a
*state* prosecution and a challenge to evidence
obtained in a search involving joint action by federal
and state officers, the search in *Pipok* was evaluated
under *state* standards to determine whether it "was
valid under Michigan law." *Id.* Thus, the search in
*Pipok* was analyzed as a search that failed to comply
with *state* statutory requirements. *Id.* Accordingly, the
holding in *Pipok* clearly reflects that, as a matter of
Michigan law, a mere failure to attach an affidavit to
a search warrant does not require the suppression of
evidence seized pursuant to that warrant.

We strongly agree with the pertinent holding by the
*Pipok* Court. It is one thing, under certain circum-
stances, to order the drastic remedy of suppressing
highly relevant evidence to enforce the fundamental
constitutional guarantees against unreasonable
searches and seizures of US Const, Am IV and Const
1963, art 1, § 11. It is quite another to extend the
exclusionary rule to a technical deficiency, such as

failing to provide or leave a copy of an affidavit in connection with the exercise of a reasonable search in which the law enforcement officers executing the search provide a copy of the search warrant itself, thereby providing notice that the search has been judicially authorized. In sum, the district court erred in suppressing the evidence found during the search of the residence at issue from use against Garvin. The circuit court similarly erred in upholding the district court's action.

### IV. DEFENDANT BURKETT—THE SEARCH OF THE VEHICLE

"[I]n light of the exigency arising out of the mobility of the vehicle," law enforcement officers may search an automobile on the basis of probable cause without the issuance of a search warrant. *People v Taylor*, 454 Mich 580, 588; 564 NW2d 24 (1997). Also, fewer foundational facts are needed to support a search of a motor vehicle than a house or home. *People v Whalen*, 390 Mich 672, 682; 213 NW2d 116 (1973).

As this Court has previously stated:

> It is well settled that an automobile may be searched without a warrant under circumstances that would not justify the search of a home, provided there is probable cause to believe that the car contains articles that the officers are entitled to seize. Whether probable cause exists depends on the information known to the officers at the time of the search. [*People v Armendarez*, 188 Mich App 61, 71-72; 468 NW2d 893 (1991) (citations omitted).]

See also *People v LoCicero (After Remand)*, 453 Mich 496, 502; 556 NW2d 498 (1996) ("fewer facts are needed to establish reasonable suspicion when a person is in a moving vehicle than in a house"). Our dis-

senting colleague appears to question whether the automobile exception to the warrant requirement applies in this case because of the location and possible lack of mobility of Burkett's vehicle. However, "[i]t is well settled that the police may lawfully search an automobile without a warrant where they have probable cause to believe that the vehicle contains contraband." *People v Carter*, 194 Mich App 58, 60-61; 486 NW2d 93 (1992). In this regard, where the police have probable cause to search an automobile, they may do so without a search warrant even if they would have had time and opportunity to obtain a search warrant. *People v Clark*, 220 Mich App 240, 242; 559 NW2d 78 (1996). "The basis for this rule is the lessened expectation of privacy in an automobile." *Id.*

The prosecution argues that the district court erred in finding that the police lacked probable cause to search Burkett's vehicle, the Bronco that was parked in the driveway of the residence. We agree. Because the essential facts are undisputed, our review is de novo. *Goforth, supra.*

A finding of probable cause requires a " 'substantial basis for . . . [concluding]' that a search would uncover evidence of wrongdoing . . . ." *Illinois v Gates*, 462 US 213, 236; 103 S Ct 2317; 76 L Ed 2d 527 (1983) (citation omitted). There must be "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238; *People v Mayes (After Remand)*, 202 Mich App 181, 185-186; 508 NW2d 161 (1993). The determination whether probable cause exists to support a search, including a search of an automobile without a warrant, should be made in a commonsense manner in light of the totality of the circumstances. *Id.*

In the case at hand, in connection with executing the search warrant inside the residence, the police found that Burkett had thousands of dollars in cash on his person. Obviously, it is highly peculiar for someone to carry such a large amount of cash on one's person. The residence that the police searched contained a large amount of the illicit drugs cocaine and marijuana. It is common knowledge that illicit drug transactions often involve cash payments. That Burkett was in the residence with a large amount of money, combined with Burkett's attempt to flee, provided the police with probable cause to believe that he was a drug dealer connected in some way with a criminal operation that was involved with the illicit drugs found in that residence. See *People v Martinez*, 187 Mich App 160, 171; 466 NW2d 380 (1991), remanded on other grounds 439 Mich 986 (1992) (observing in a case in which a gun and a large amount of cash were found in a vehicle, "the presence of such a large sum of currency without a ready explanation for its presence might suggest . . . that defendants either had been involved in a robbery or were involved in drug trafficking"). Inasmuch as (a) illicit drugs are frequently transported from their place of manufacture to the various locations where they are ultimately sold to drug users and (b) shortly before the search of the residence, a police officer had observed Burkett arrive at the residence in the vehicle that was searched, there was a substantial basis under the totality of the circumstances, and thus probable cause, to conclude that the police would discover illicit drugs intended for delivery to points of distribution in Burkett's vehicle.

We note that a person's receipt of a package of contraband "establishes probable cause to search the res-

idence for other contraband and items associated with drug trafficking." *People v Brake*, 208 Mich App 233, 239; 527 NW2d 56 (1994). Similarly, we hold that evidence establishing probable cause to believe that a person is involved in drug dealing and has driven an automobile to a house in which a large amount of illicit drugs have been found ordinarily provides probable cause to support a search of that automobile for illicit drugs.

We respectfully view our dissenting colleague as employing too high a bar for finding probable cause to search an automobile. The mere fact that there may have been innocent explanations for Burkett to have had thousands of dollars in cash on his person and to have run from the police does not mean that such conduct, combined with the other circumstances of this case including the location of a substantial amount of illicit drugs inside the house, was not suspicious and that the totality of the circumstances failed to provide the police with probable cause to search Burkett's vehicle.[3] A proper finding of "probable cause" simply does *not* require as its basis a conclusion that it is *overwhelmingly* likely that a search will uncover contraband or other evidence—or that it is more likely than not that a search will turn up the type of item suspected:

> In [*Gates, supra*] at 235, the [United States Supreme] Court rejected a definition of probable cause as more prob-

---

[3] We certainly do not conclude, as the dissent intimates, *post* at 116, that people carrying a large amount of money in a high-crime area or a suspected location of criminal activity "forfeit[] their Fourth Amendment rights." However, where the police conduct a search consistent with the Fourth Amendment, as in this case, there is no violation, and thus no forfeiture, of Fourth Amendment rights. "[T]he Fourth Amendment does not guarantee freedom from all searches and seizures, rather only from those that are unreasonable." *Taylor, supra* at 588-589.

able than not, stating that probable cause requires " 'only the probability, and not a prima facie showing, of criminal activity . . . .' " [*People v Russo*, 439 Mich 584, 607; 487 NW2d 698 (1992).]

To review the basic facts underlying the search of Burkett's vehicle, the police found thousands of dollars in cash on Burkett's person in a house containing a large amount of drugs. While less important, there was also evidence of flight by Burkett. The proper analysis of the facts underlying the police search at issue is not to break down the overall set of facts and consider each factor in isolation, e.g., whether having a large amount of cash on one's person standing alone is suspicious. Rather, examining the totality of the circumstances surrounding Burkett's presence in this "drug house" with a large amount of cash in a commonsense manner, the police had a substantial basis for concluding that Burkett was a drug dealer and that there was a fair probability that their search of Burkett's vehicle would locate more contraband. *Gates, supra; Mayes, supra.* No more was required for the police to have had probable cause to search Burkett's vehicle.

The police searching Burkett's vehicle did not ultimately find illicit drugs, but did find the gun at issue. The police were justified in seizing the gun under the plain view doctrine. *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996) (police officers may seize items in plain view without a warrant "if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent").

We disagree with the district court's statement that "[t]his case is similar to *Ybarra v Illinois*, 444 US 85 [100 S Ct 338; 62 L Ed 2d 238] (1979) where the

Supreme Court found that mere presence on premises subject to [a] search warrant was insufficient to justify the search of a person without a particularized basis of probable cause with respect to the person." In *Ybarra*, a search warrant was issued authorizing the search of a tavern and a bartender in that tavern for heroin and other items. *Id.* at 87-88. Later that day, police officers went to the tavern and, upon entering it, announced their purpose and further advised that they were going to search all those present in the tavern for weapons. The following transpired with regard to Ventura Ybarra, the defendant in that case:

> The police officer who frisked the patrons found the appellant, Ventura Ybarra, in front of the bar standing by a pinball machine. In his first patdown of Ybarra, the officer felt what he described as "a cigarette pack with objects in it." He did not remove this pack from Ybarra's pocket. Instead, he moved on and proceeded to pat down other customers. After completing this process the officer returned to Ybarra and frisked him once again. This second search of Ybarra took place approximately 2 to 10 minutes after the first. The officer relocated and retrieved the cigarette pack from Ybarra's pants pocket. Inside the pack he found six tinfoil packets containing a brown powdery substance which later turned out to be heroin. [*Id.* at 88-89.]

The Court concluded that the police did not have probable cause for a general search of Ybarra's person or even reasonable suspicion to conduct a patdown search for weapons pursuant to *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). *Ybarra, supra* at 91-93. The Court stated, "[i]n short, the agents knew nothing in particular about Ybarra, except that he was present, along with several other customers, in a public tavern at a time when the

police had reason to believe that the bartender would have heroin for sale." *Id.* at 91.

Here, unlike *Ybarra* in which the police had no probable cause or even reasonable suspicion to search Ybarra's person, the police had probable cause to search Burkett's vehicle. *Ybarra* involved a tavern, a business establishment frequented by members of the public. There was no reasonable basis to suspect that Ybarra or any other specific patron would have drugs on his person. Indeed, it is readily apparent that many people might patronize a tavern open to the public without having any knowledge that it was being used as a point of distribution for illicit drugs. In contrast, the case before us involves a private residence where the police found a large amount of illicit drugs and large sums of cash on Burkett's person. Accordingly, there was a basis *particular to Burkett* to justify a finding of probable cause to search Burkett's vehicle for illicit drugs.

While the prosecution has advanced other rationales to support the search of Burkett's vehicle, we decline to address those arguments in light of our conclusion that this search was justified by probable cause under the automobile exception to the warrant requirement.[4]

---

[4] However, we note that the prosecution's position that the search warrant for the residence was broad enough to encompass a search of Burkett's vehicle parked in the driveway of that residence is academic. If probable cause existed to search the vehicle, no warrant was necessary for the search because of the automobile exception to the warrant requirement. *Taylor, supra* at 588. Conversely, if the police lacked probable cause to search the vehicle, a search warrant would not have justified the search because, to be valid, a search pursuant to a search warrant must be supported by probable cause. See, e.g., *People v Hellis*, 211 Mich App 634, 655-656 (JANSEN, J., concurring), 658 (HOLBROOK, JR., P.J., concurring); 536 NW2d 587 (1995).

We reverse the district court order and opinion suppressing evidence and dismissing the instant charges with regard to both defendants in this case. We also reverse the circuit court order and opinion affirming the district court's order and opinion. We remand this case to the district court for further proceedings consistent with this opinion. We do not retain jurisdiction.

Markey, J., concurred.

Holbrook, Jr., P.J. (*concurring in part and dissenting in part*). While I agree with the majority's conclusion in the Garvin case, I respectfully dissent from the majority's conclusion that sufficient probable cause existed to justify the search of Burkett's vehicle. Accordingly, I would affirm the circuit court's order affirming the district court's suppression of the Burkett evidence.

DEFENDANT BURKETT

I. FACTUAL AND PROCEDURAL BACKGROUND

As noted in the majority opinion, pursuant to a search warrant obtained from the 50th District Court, officers from the Pontiac Police Department executed a search warrant at the house located at 605 Wyoming in Pontiac on November 18, 1993. The warrant described with sufficient particularity both the premises located at 605 Wyoming and Garvin. The warrant did not provide for the search of the curtilage of the premises or any vehicles found at the location. The warrant did specify, however, that all occupants found on the premises at the time of the raid were subject to being searched.

Approximately one-half hour before the raid began, Burkett was observed pulling into the driveway of the residence by Officer Phillip Sailor. Burkett was driving a black Ford Bronco. Burkett left the vehicle and entered the house. From the time he entered the house, Burkett did not return to the Bronco. In the affidavit in support of the search warrant, Officer William Pummill states that he had been informed by a confidential informant that cocaine was being stored at the house. The informant told Officer Pummill that in the four weeks before November 18, 1993, the informant had witnessed Garvin in possession of cocaine on three separate occasions. There is no indication in the affidavit that Pummill's informant ever observed Burkett or someone matching his description at the residence during those four weeks.

In granting Burkett's motion to suppress, District Court Judge William Waterman (who had issued the search warrant) concluded that

> the warrant provided no basis for the search of Mr. Burkett's car, which was locked and secured outside of the premises. Moreover, the court concludes that Mr. Burkett's presence at 605 Wyoming did not provide any independent grounds for the search of his vehicle.
>
> In this case, the Court finds that there was no probable cause to arrest Mr. Burkett for possession of drugs found in the residence. Although he was present, there was no indication that Mr. Burkett was connected to the drugs . . . found. . . .
>
> . . . Accordingly, . . . there was certainly no probable cause to believe that drugs would be located in his car. . . .

                        *       *       *

Applying [*People v*] *Jackson* [180 Mich App 339; 446 NW2d 891 (1989)], the court finds that the search of Mr. Burkett's car must be supported by an independent basis for probable cause. Clearly, the search of the vehicle cannot

be justified as a *Terry* search,[1] as the car was locked and outside of the premises. All parties on the premises were secured inside the house and there was no suggestion that anyone was at or near the car to put the officers safety in jeopardy. The court distinguishes the search of the vehicle from a search of Mr. Burkett's person, which may have been justified for the [officers'] safety in executing the warrant. The record in this case is simply void of any indication of probable cause that Mr. Burkett was committing a crime.

\*          \*          \*

. . . [*People v*] *Arterberry* [431 Mich 381; 429 NW2d 574 (1988),] is not controlling in this case because even if there was probable cause to arrest Mr. Burkett for loitering, the search of his vehicle, which was locked outside, was not a search incident to arrest.

The prosecution then appealed to the circuit court, which affirmed the ruling of the district court.

## II. THE FOURTH AMENDMENT AND THE AUTOMOBILE EXCEPTION

The Fourth Amendment of the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."[2] The United States Supreme Court has consistently observed that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v United States*, 389 US 347, 357; 88 S Ct 507; 19 L Ed 2d 576 (1967). Accord *California v Acevedo*, 500 US 565, 580; 111 S Ct 1982; 114 L Ed 2d 619 (1991); *Chambers v Maroney*, 399 US

---

[1] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

[2] US Const, Am IV.

42, 51; 90 S Ct 1975; 26 L Ed 2d 419 (1970) ("Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search."). One such exception, the automobile exception, was first recognized by the Court in *Carroll v United States*, 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925). The Court has also held that the scope of the automobile exception is narrow, *California v Carney*, 471 US 386, 401; 105 S Ct 2066; 85 L Ed 2d 406 (1985), being "no broader and no narrower than a magistrate could legitimately authorize by warrant," *United States v Ross*, 456 US 798, 825; 102 S Ct 2157; 72 L Ed 2d 572 (1982).

Although the automobile exception has been "specifically established" for almost three-quarters of a century, the "delineation" of its boundaries has been particularly fluid. As first established, the automobile exception was premised on the automobile's "ready mobility."[3] *Carney, supra* at 390; *Chambers, supra* at 51. As the *Carroll* Court explained,

> the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. [*Carroll, supra* at 153.]

---

[3] Historically, a vehicle was considered to be "readily mobile" if it was (1) stopped as it was being used on a public highway, *Michigan v Thomas*, 458 US 259, 261; 102 S Ct 3079; 73 L Ed 2d 750 (1982), or (2) parked in a public area, *Chambers, supra* at 51.

However, recent decisions by the United States Supreme Court have clearly indicated that "ready mobility" is no longer the sole justification for the automobile exception. As the Court observed in *Carney*: "Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the . . . exception." *Carney, supra* at 391. Accord *Pennsylvania v Labron*, 518 US 938, 940; 116 S Ct 2485; 135 L Ed 2d 1031 (1996).

Yet, while the justification for a search without a warrant no longer is limited to the exigencies of the moment, the law still recognizes that a significant difference exists between those automobiles that are located in public places and those that are located on private property. In the words of the *Carney* Court:

> When a vehicle is being used on the highways, or if it is readily capable of such use *and is found stationary in a place not regularly used for residential purposes*—temporary or otherwise—the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation *inapplicable to a fixed dwelling.* [*Carney, supra* at 392-393 (emphasis added).]

See also *People v Taylor*, 454 Mich 580, 583, 588; 564 NW2d 24 (1997) (a case involving a vehicle parked in a public parking lot); *United States v Sinisterra*, 77 F3d 101 (CA 5, 1996); *United States v Panitz*, 907 F2d 1267, 1271 (CA 1, 1990). As the Court stated in *Coolidge v New Hampshire*, 403 US 443, 461; 91 S Ct 2022; 29 L Ed 2d 564 (1971), a case involving the search without a warrant of a vehicle parked in the driveway of the defendant's residence: "The word

'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears."

Thus, I do not believe that relevant case law sanctions the search without a warrant of defendant's vehicle, which was parked, locked, inaccessible to Burkett, and in a private residential driveway when it was searched. Under the circumstances of this case, neither justification for the automobile exception to the warrant provision of the Fourth Amendment comes into play.

Additionally, I do not feel as if the requisite probable cause has been established. The police testified during the preliminary examination that Garvin's residence had been under surveillance for approximately four weeks before the November 18, 1993, raid. Yet there is no indication that Burkett was ever observed at the location during those four weeks. Indeed, Burkett was not identified—either specifically or by description—in the Garvin search warrant. The majority concludes that the circumstances surrounding Burkett's arrest "provided the police with probable cause to believe that he was a drug dealer connected in some way with a criminal operation that was involved with the illicit drugs found in that residence." *Ante* at 103. If the evidence cited by the majority indicates that Burkett was intimately involved in this particular "criminal operation," then how could it be that there is no evidence in the record establishing his continuing involvement in the month before the raid?

Further, officers involved in the preraid surveillance of Garvin's residence testified that Burkett was not observed carrying any packages either to or from his vehicle. One officer admitted that he had no reason to believe that there was any contraband inside

the vehicle, while another testified that there was
nothing particular about the circumstances of Bur-
kett's visit that would distinguish Burkett from any
other visitor that just happened to come by Garvin's
home at that particular time on that particular day.
Cf. *People v Shabaz*, 424 Mich 42, 60; 378 NW2d 451
(1985) (observing that the "[d]efendant's presence in
a high-crime neighborhood does nothing to distin-
guish him from any number of other pedestrians in
the area").

The majority finds it significant that Burkett ran
away from the officers when they entered Garvin's
home. It is well established in our jurisprudence,
however, that "flight alone is not a reliable indicator
of guilt without other circumstances because flight
alone is inherently ambiguous . . . ." *Id.* at 64. As the
United States Supreme Court observed in an oft-
quoted passage from *Wong Sun v United States*, 371
US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963):

> "[I]t is a matter of common knowledge that men who are
> entirely innocent do sometimes fly from the scene of a
> crime through fear of being apprehended as the guilty par-
> ties, or from an unwillingness to appear as witnesses. Nor
> is it true as an accepted axiom of criminal law that 'the
> wicked flee when no man pursueth, but the righteous are as
> bold as a lion.' " [*Id.* at 483, n 10, quoting *Alberty v United
> States*, 162 US 499, 511; 16 S Ct 864; 40 L Ed 1051 (1896).]

The circumstances of this case highlight the danger
of placing too much emphasis on flight when evaluat-
ing probable cause. For example, there is no indica-
tion in the record that the police officers who entered
Garvin's    home    complied    with    the    knock-and-
announce rule. MCL 780.656; MSA 28.1259(6). If the
police did not announce their presence before forci-
bly entering the residence, then it would be perfectly

logical for those inside to flee from the unknown persons breaking into the residence. Cf. *Shabaz, supra* at 64 (observing that it was reasonable under the circumstances of that case for the defendant to flee when he was "being scrutinized and then 'tailed' by three unknown persons in a 'private' motor vehicle . . ."). Therefore, I do not believe that, by itself, Burkett's flight from the police inside the Garvin residence is a reliable indicator that Burkett was involved in criminal activity. Alone, and under the circumstances of this case, Burkett's flight lends itself just as easily to an innocent explanation as it does to a nefarious one.

I also do not believe that the other factors cited by the majority as dispositive resolve this ambiguity in favor of the prosecution. In the words of the majority: "That Burkett was in the residence with a large amount of money, combined with Burkett's attempt to flee, provided the police with probable cause to believe that he was a drug dealer connected in some way with a criminal operation that was involved with the illicit drugs found in that residence." *Ante* at ___. As previously noted, however, there was nothing about Burkett's visit that day that would somehow distinguish him from any other random visitor at the Garvin home. As for the fact that Burkett was carrying several thousands of dollars in cash on his person, this too is capable of an innocent explanation. Surely not everyone who is carrying a large sum of money who also happens to be in either a high-crime area or a location suspected of being the site of criminal activity automatically forfeits their Fourth Amendment rights.

It also appears to me that the majority's probable cause analysis is predicated on an erroneous premise.

The majority states that "fewer foundational facts are needed to support a search of a motor vehicle than a house or home." *Ante* at 101. In support of this premise, the majority cites *People v LoCicero (After Remand)*, 453 Mich 496; 556 NW2d 498 (1996), and *People v Whalen*, 390 Mich 672; 213 NW2d 116 (1973). Neither of these cases addressed the reasonable and necessary grounds that need to be established to justify the search of a vehicle without a warrant, let alone one parked on private property. Instead, both cases dealt with the amount of evidence necessary to validate an *investigatory stop. LoCicero, supra* at 501-502; *Whalen, supra* at 682. The case at hand does not involve an investigatory stop of Burkett. Rather, the question before us is the validity of the search of his vehicle without a warrant.

Although the automobile exception allows for the search of a vehicle without a warrant, such a search must nevertheless be *"based upon probable cause* to believe that the vehicle contained evidence of crime . . . ." *Acevedo, supra* at 569 (emphasis added). Accord *Carney, supra* at 392 ("In short, the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to authority of a magistrate *so long as the overriding standard of probable cause is met."* [emphasis added]). The "reasonable suspicion" standard applicable to investigatory stops (which has been characterized as being more than a " 'hunch,' but less than the level of suspicion required for probable cause," *People v Champion*, 452 Mich 92, 98; 549

NW2d 849 [1996]⁴), has no application in the case at hand.

Accordingly, I would affirm the district and circuit courts' suppression of the evidence and dismissal of the case against Burkett.

---

⁴ In *Ornelas v United States*, 517 US 690; 116 S Ct 1657; 134 L Ed 2d 911 (1996), the United States Supreme Court observed that "[a]rticulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. . . . They are instead fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed." *Id.* at 695-696. However, while the standards themselves find expression in the applicable factual and historical circumstances of a given case, their application is nonetheless limited to those particular circumstances to which they have been ascribed. *Id.* at 693 (observing that "[a]n investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion, . . . and a warrantless search of a car is valid if based on probable cause").