*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JERRY LEE CUMMINGS, JR,

       Defendant-Appellant.

UNPUBLISHED
March 18, 2026
11:14 AM

No. 376757
Genesee Circuit Court
LC No. 24-052917-FH

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's denial of his motion to suppress the introduction of contraband that the police found in his vehicle during a traffic stop. We affirm.

## I. FACTS

This case arises out of a traffic stop that occurred on August 19, 2023, in Grand Blanc Township. Sergeant Aaron Quinn was on patrol when he noticed a car with tinted windows driving westbound on Hill Road. Sergeant Quinn then initiated a traffic stop on the car. After the car pulled over, Sergeant Quinn asked the driver to step out and bring his documents to the patrol vehicle because, for officer safety, he did not want to stand on the driver's side of the stopped car with traffic passing so closely. In addition, Sergeant Quinn could not see into the car because of the window tint.

Sergeant Quinn testified that the driver was hesitant to exit the car. However, the driver, who was later identified as defendant, eventually exited the car and provided his driver's license to the sergeant. Sergeant Quinn explained that defendant opened his door, but did not immediately get out of the car. As a result, he could see what he thought was a bottle of promethazine, a cough suppressant, in the driver's side door pocket compartment. The bottle was a distinct, orange-red color with a bright white lid. The bottle was prominently visible because the inside of the car was charcoal gray. Sergeant Quinn also

---

[1] *People v Cummings*, unpublished order of the Court of Appeals, entered October 17, 2025 (Docket No. 376757).

observed that the bottle was missing its label.[2] He thought that the bottle was suspicious "[b]ecause I have never had an experience where there wasn't criminal activity associated with something like that." Sergeant Quinn explained that normally, someone would not remove the label from a bottle containing such a substance unless it was illegal.[3] Sergeant Quinn stated that he was approximately one car length from defendant's car when he saw the bottle. Further, in addition to observing the suspicious bottle, Sergeant Quinn entered defendant's identification into LEIN, and the results included an "officer caution," which he explained is "a warning to law enforcement that the offender had been convicted at some time of a – a resisting offense, a drug offense or a weapons offense."

Sergeant Quinn asked defendant about the prescription bottle, and defendant responded that the bottle was empty. Also, Sergeant Quinn searched defendant and found a large amount of cash and two cellular phones.[4] Defendant stated that he was carrying approximately $5,000, but the actual amount was $7,700. The sergeant testified that considering all the facts together, including the multiple phones, large quantity of cash, and possible contraband in the car, led him to believe that defendant was involved with "narcotic trafficking" or sales.

Sergeant Quinn, by this time, had called for backup, which quickly arrived. The suspicious bottle that initially caught his attention was indeed empty. However, while he searched the driver's side of defendant's car, he discovered a prescription bottle with no label. The bottle had the word "opioids"

---

[2] He testified at the evidentiary hearing that "I could . . . tell that the label was missing just from the irregular shape of the – from the irregular shape of the – where the label should have been." He added that "you could see that it was whitish and then clear where it should – or orangish where it shouldn't have been."

[3] Promethazine with codeine is a controlled substance, which requires a prescription.

[4] On appeal, defendant asserts that Sergeant Quinn only found one cellular phone in his possession. However, Quinn's testimony indicates that he found two cellular phones, although we acknowledge that it is a bit unclear:

Q: Anything else you find on him?

A: A phone.

Q: How many?

A: I believe there were two, and then one in the – another two in the car.

Q: Okay.

A: I would have to look at my report to refresh my memory on that. I know that there is a flip phone. Another one plugged into the dashboard.

Q: So, you said about four?

A: Yes.

written on it in large black letters. He saw pills inside the bottle. The bottle was found on the driver's side floorboard and contained 50 10-miligram oxycodone pills. Defendant initially stated that the pills belonged to his "auntie." A short while later, however, defendant stated that the pills belonged to his cousin.

Defendant was arrested and charged with possession with intent to deliver oxycodone as a fourth-offense habitual offender. He moved to suppress all evidence seized from his car, asserting that the search was unconstitutional. The trial court held an evidentiary hearing on the motion in May 2025. Before the presentation of any witness testimony, the trial court reviewed the video from Sergeant Quinn's body camera. Then, the sergeant testified as to the events surrounding the traffic stop and the items discovered during the search of defendant and his car. With respect to the video, Quinn testified that he could see clearer than what was shown in the video. He explained that the video was grainy. He could easily see the top third of the bottle in defendant's car while defendant had the door open. He also explained that the video did not show everything he saw because it sits below his face and does not point downward at an angle.

The trial court ultimately denied the motion in a written opinion and order. It determined that the traffic stop was valid because defendant's car had tinted windows in violation of MCL 257.709, and he made an improper left turn in violation of MCL 257.647. The trial court then explained that Sergeant Quinn had probable cause to search defendant and his car:

> This court next determines Quinn was provided with probable cause to believe there was contraband in the vehicle and felonious criminal activity was afoot on the basis [of] his experience and training as [a] law enforcement officer insofar as he was able to see, from his patrol vehicle, when defendant opened his driver's door, a brown bottle with a prescription label scratched off similar to bottles he had observed during the course of his law enforcement activities, and he had never seen such a bottle that was not an indicator of criminal activity. Quinn properly determined there was reasonable suspicion of criminal activity, despite the fact the bottle later turned out to be empty.

Defendant now appeals.

## II. DISCUSSION

Defendant argues that the trial court erred by denying his motion to suppress because the evidence at issue was obtained in violation of his rights under the Fourth Amendment. In particular, while defendant does not challenge the initial traffic stop or the search of his person, he argues that Sergeant Quinn lacked probable cause to search his car. We disagree.

"Findings of fact made after a suppression hearing are reviewed for clear error, while the ultimate decision on a motion to suppress is reviewed de novo." *People v Vaughn*, 344 Mich App 539, 549; 1 NW3d 414 (2022). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *Id*. (quotation marks and citations omitted).

"The Fourth Amendment guarantees to the people the right 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]' " *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022), quoting US Const, Am IV. "It further states that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized.' " *Brcic*, 342 Mich App at 277, quoting US Const, Am IV. "Generally, evidence that is obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal proceedings." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020) (quotation marks and citation omitted).

Defendant implicitly concedes that the initial traffic stop was justified. See *id*. ("A traffic stop does not violate the Fourth Amendment when a police officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law.") (quotation marks and citation omitted). However, he argues that the subsequent warrantless search of his car was unconstitutional.

Warrantless searches are presumed to be unreasonable, and thus unconstitutional, unless an exception applies. *People v Lucynski*, 509 Mich 618, 637; 983 NW2d 827 (2022). Under one such exception, "when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle." *Mich v Thomas*, 458 US 259, 261; 102 S Ct 3079; 73 L Ed 2d 750 (1982). The decision as to whether there is probable cause to support a search under the automobile exception "should be made in a commonsense manner in light of the totality of the circumstances." *People v Garvin*, 235 Mich App 90, 102; 597 NW2d 194 (1999). "A finding of probable cause requires a substantial basis for concluding that a search would uncover evidence of wrongdoing," and "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. (cleaned up). However, probable cause does not mean more probable than not, only a "fair probability." *Id*. at 102-105.

Defendant asserts that, even to the extent that the promethazine bottle was visible,[5] seeing the bottle did not give the sergeant probable cause to search his car under the automobile exception to the warrant requirement. However, Sergeant Quinn testified that he saw a bottle which he believed to be promethazine based on its distinctive color, with its label removed, a fact that he knew to be associated with criminal activity based upon his training and experience as a police officer. Compare *People v Alfafara*, 140 Mich App 551, 557; 364 NW2d 743 (1985) (explaining that a court may rest "its finding of probable cause mainly on the officer's experience and knowledge" that certain items "often contained narcotics"). In addition to the suspicious bottle, Sergeant Quinn also discovered the defendant had a large amount of cash and two cellular phones. Moreover, a LEIN database search result for defendant included an "officer caution," which suggested that defendant previously had been convicted of a "resisting" offense, a weapons offense, or, pertinent here, perhaps a drug offense. These facts, taken together, indicated to Sergeant Quinn that defendant may be involved in narcotics trafficking. Further, the fact that

---

[5] However, defendant argues that the promethazine bottle was not visible when he opened his car door or was not visible to the extent that it gave Sergeant Quinn reason to believe that the bottle contained contraband. However, Quinn testified that he immediately saw the bottle itself and the fact that the label had been removed when defendant opened his car door. The trial court credited this testimony in its written opinion and order, stating that Sergeant Quinn "was able to see, from his patrol vehicle, when defendant opened his driver's door, a brown bottle with a prescription label scratched off . . . ." This finding was not clearly erroneous. See *Vaughn*, 344 Mich App at 549. Defendant disagrees, arguing that Sergeant Quinn, by his own testimony, could only see the "top third" of the bottle. But, the implication of that testimony is that the label ordinarily would be visible on the top third of the bottle.

the label-less bottle was in the car itself suggested the possibility that other evidence of narcotics trafficking may be in the car too. As such, the totality of the circumstances indicated a fair probability that contraband or other evidence of narcotics trafficking would be found in the car. See *Garvin*, 235 Mich App at 102. Accordingly, we conclude that Sergeant Quinn had probable cause to search the car under the automobile exception to the warrant requirement of the Fourth Amendment.[6]

## III. CONCLUSION

The trial court did not clearly err by finding that Sergeant Quinn could see the label-less bottle when defendant opened his car door. This fact, in addition to the other facts known to Sergeant Quinn during the traffic stop, provided probable cause to search defendant's car under the automobile exception to the search warrant requirement. We affirm.


/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young

---

[6] Defendant argues that Sergeant Quinn "failed to employ the least intrusive means reasonably available to investigate the new set of circumstances he happened upon after stopping Mr. Cummings for minor traffic violations." However, "[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Illinois v Lafayette*, 462 US 640, 647; 103 S Ct 2605; 77 L Ed 2d 65 (1983). Moreover, the evidence presented shows that Sergeant Quinn diligently pursued the investigation to confirm or dispel his suspicion. There is no indication that the scope and duration of the stop was unreasonable under the circumstances. Indeed, the search of the car was conducted in a matter of minutes. See *People v Yeoman*, 218 Mich App 406, 413; 554 NW2d 577 (1996) (explaining that "because the investigating officer was diligently pursuing a means of investigation likely to quickly confirm or deny his suspicions, the detention, even if as long as forty-five minutes as defendant claims, was not improper").

We also note that the "least intrusive means" is a question for the validity of a "reasonable suspicion" stop under *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). *United States v Newell*, 596 F3d 876, 879 (CA 8, 2010). Here, the search of the car was supported by probable cause.