*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 17, 2019

Plaintiff-Appellee,

v

No. 342905
Berrien Circuit Court
LC No. 2017-015660-FH

DONALD JAMES SWANK,

Defendant-Appellant.

Before: MARKEY, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for possessing a vehicle that he knew or had reason to know was to be used to manufacture methamphetamine (obtaining or maintaining a methamphetamine laboratory), MCL 333.7401c(2)(f); manufacturing methamphetamine, MCL 333.7401(2)(b)(*i*); possession of methamphetamine, MCL 333.7403(2)(b)(*i*); and operation of a motor vehicle while under the influence of methamphetamine, MCL 257.625. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 12 to 30 years' imprisonment for the obtaining or maintaining a methamphetamine laboratory conviction; 12 to 30 years' imprisonment for the manufacturing methamphetamine conviction; 1 to 20 years' imprisonment for the possession of methamphetamine conviction; and 93 days in jail for the operation of a vehicle while under the influence of methamphetamine conviction. For the reasons set forth in this opinion, we affirm the convictions and sentences of defendant.

## I. BACKGROUND

This case arises out of a traffic stop that occurred on May 24, 2017 at 1:40 a.m. in Niles, Michigan. At trial, testimony revealed that a Niles police officer noticed a suspicious white van with Indiana plates driving on a short dirt road near a car dealership. The officer followed the van until it pulled into a Walgreens parking lot. The officer observed that the driver of the van had difficulty parking the vehicle even though the lot was mainly empty. The officer next observed a female exit the van, proceed into Walgreens, and then return to the van. The officer followed the van as it left the parking lot because his experience had taught him that individuals

would come from Indiana to the 24-hour Niles Walgreens to buy Sudafed to make methamphetamine. The van then embarked on what can best be described as a circuitous route as the officer continued to follow. When the van entered onto a residential street, the officer noted that it was traveling 32 miles per hour in a 25 miles per hour zone. The van next abruptly pulled into a driveway of a home that no one in the van had any connection to, and the officer pulled his patrol car behind the van and activated his patrol car's lights.

The officer made contact with defendant, the driver and registrant of the van. When asked why he was driving on a dirt road behind a car dealership, defendant offered several explanations, none of which made any sense to the officer. Defendant went on to explain to the officer that he drove his female passenger to Walgreens so that she could pick up a prescription. At the time of the initial stop, the officer noted that defendant's eyes were dilated, he was increasingly alert, "fidgety," and was becoming irritable. The officer, being Advanced Roadside Impairment Detection (ARIDE) certified, recognized those symptoms as signs of methamphetamine use. Additionally, the officer testified that he could smell alcohol on defendant's breath. During the initial stop, the officer asked defendant if had had been drinking to which defendant responded that earlier in the evening he drank some Fireball whiskey.

The officer then ran a L.E.I.N. and discovered that there was an active warrant for defendant in Berrien County for retail fraud, prompting the arrest of defendant. A sealed box of Sudafed was discovered near the front passenger seat of the van. Defendant's female passenger, Dionne Splunge, admitted that she purchased the Sudafed at Walgreens for defendant. Staff at the Niles Walgreens store confirmed that a woman had just purchased Sudafed.

Defendant's brother, Erik Swank, was sitting on a toolbox in between the van's two front seats. After being asked to exit the van, and as he was walking toward the officer's patrol vehicle, a pink or orange "pipe" fell to the ground. The officer also discovered a bag of methamphetamine in Erik's pocket and an additional container of methamphetamine tucked into the leg of his underwear.

Next, the officer began a search of the van. He discovered a metal pressure cooker behind the seats in the van, opened it and recognized that it was a one-pot laboratory for making methamphetamine. At that juncture the officer stopped the search of defendant's van because he was not certified to handle a methamphetamine laboratory.

Detective Jason Sweet from the Michigan State Police Southwest Enforcement Team (SWET) was called to properly investigate and dispose of the items in defendant's van. Sweet discovered items used in the manufacture of methamphetamine in the pressure cooker including an additional box of Sudafed in which all the tablets had been removed from the bubble container. He handed a piece of tubing from the pressure cooker to the arresting officer which field-tested positive for methamphetamine. According to the arresting officer, defendant initially denied knowing anything about the pressure cooker; however, he eventually acknowledged that Erik brought it into the van. Defendant eventually admitted that methamphetamine would be in his system, but he did not feel that he was under the influence of methamphetamine. Subsequent blood-test results showed that defendant was positive for methamphetamine and benzoylecgonine, a metabolite of cocaine.

At trial, Erik testified on defendant's behalf. He explained that he was charged with manufacturing methamphetamine, operating a methamphetamine laboratory, possession of methamphetamine, and possession of other drugs (pills). Erik pleaded guilty to manufacturing methamphetamine and the other charges were dismissed. He testified that he had brought the pressure cooker into defendant's van, but defendant did not know anything about it or its contents. According to Erik, he did not make any methamphetamine in the van, nor did he plan to make any methamphetamine in the van. Rather Erik was along for the ride because he was going to be dropped off at a friend's house. Erik explained that defendant never made methamphetamine or helped Erik make methamphetamine. Further, Erik did not need the Sudafed purchased by Splunge because he already had everything that he needed. Erik admitted that he and defendant "snorted" methamphetamine in the van however; Erik did not think that defendant knew it was methamphetamine because defendant usually used cocaine.

Following a two-day trial, the jury convicted defendant as stated *supra.* Following his sentencing, this appeal ensued.

## II. ANALYSIS

On appeal, defendant first argues that the trial court erred in denying his motion to quash the bindover. "This Court reviews a trial court's decision on a motion to quash the information for an abuse of discretion. To the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010) (citation omitted). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks and citation omitted).

> The primary function of the preliminary examination is to determine whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it. Probable cause that the defendant has committed a crime is established by evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt. To establish that a crime has been committed, a prosecutor need not prove each element beyond a reasonable doubt, but must present some evidence of each element. Circumstantial evidence and reasonable inferences from the evidence can be sufficient. If the evidence conflicts or raises a reasonable doubt, the defendant should be bound over for trial, where the questions can be resolved by the trier of fact. [*People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009) (citations omitted).]

"The probable-cause standard of proof is, of course, less rigorous than the guilt-beyond-a-reasonable-doubt standard of proof." *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003) (quotation marks and citation omitted).

Defendant was convicted of all four charges as a result of a jury trial and he does not argue on appeal that there was insufficient evidence to support his convictions. Defendant also did not move for a directed verdict at trial. As a result, this Court will not consider whether the

-3-

evidence presented at the preliminary examination was sufficient to warrant a bindover. See *People v Hall*, 435 Mich 599, 601-603; 460 NW2d 520 (1990) (an evidentiary deficiency at the preliminary examination is not a ground for reversing a subsequent conviction when the defendant was not prejudiced by the error). Here, defendant has not demonstrated the necessary prejudice; accordingly, defendant is not entitled to relief on this issue.

Next, defendant argues that the trial court erred in denying his motion to suppress the items found in the van and a statement he made to the police. This Court reviews "[a] trial court's findings of fact on a motion to suppress . . . for clear error." *People v Hrlic*, 277 Mich App 260, 262-263; 744 NW2d 221 (2007). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). However, "the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference," so this Court reviews "de novo the trial court's ultimate ruling on the motion to suppress." *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV.]

Typically, evidence that is unconstitutionally seized must be excluded from trial. *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). "[I]n order to show that a search was legal, the police must show either that they had a warrant, or that their conduct fell under one of the narrow, specific exceptions to the warrant requirement." *People v Davis*, 442 Mich 1, 10; 497 NW2d 910 (1993). "Examples of exceptions to the warrant requirement are: (1) searches incident to arrest, (2) automobile searches and seizures, (3) plain view seizure, (4) consent, (5) stop and frisk, and (6) exigent circumstances." *Id*.

In regard to defendant's argument relating to the suppression of the items discovered in the van, it is undisputed that the officer did not have a warrant to search defendant's van. Therefore, for the search to be constitutionally permissible, it must fall under one of the exceptions to the warrant requirement. *Davis,* 442 Mich at 10. Examination of the record presented in this case leads us to conclude that the automobile exception to the warrant requirement applies to the actions undertaken by the police.

It is well-settled that the police may lawfully search an automobile without a warrant where they have probable cause to believe that the vehicle contains contraband. *People v Garvin*, 235 Mich App 90, 102; 597 NW2d 194 (1999), citing *People v Carter,* 194 Mich App 58, 60-61; 486 NW2d 93 (1992). As this Court has stated, where the police have probable cause to search an automobile, they may do so without a search warrant even if they would have had time and opportunity to obtain a search warrant. "The basis for this rule is the lessened expectation of privacy in an automobile." *People v Clark*, 220 Mich App 240, 242; 559 NW2d 78 (1996).

The issue then becomes whether police had probable cause to search defendant's van. A finding of probable cause requires a "substantial basis for . . . [concluding] that a search would uncover evidence of wrongdoing . . . ." *Illinois v Gates,* 462 US 213, 236; 103 S Ct 2317; 76 L Ed 2d 527 (1983) (citation omitted); *Garvin,* 235 Mich App at 102. There must be "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id* at 238; *People v Mayes (After Remand),* 202 Mich App 181, 185-186; 508 NW2d 161 (1993). The determination whether probable cause exists to support a search, including a search of an automobile without a warrant, should be made in a commonsense manner in light of the totality of the circumstances. *Id.*

Here, testimony revealed that the arresting officer observed defendant driving erratically at 1:40 a.m. He also observed that defendant's van had Indiana plates and one of his passengers went to Walgreens. Based on the arresting officer's experience and training, the officer knew that Walgreens had been used by Indiana residents to purchase Sudafed for the purpose of making methamphetamine. Once stopped, defendant's explanations as to why he was driving on the dirt road near the dealership did not make any sense to the officer. The officer smelled alcohol on defendant, and defendant admitted to the consumption of alcohol. The officer testified that defendant also exhibited signs of being under the influence of methamphetamine. The officer observed a box of Sudafed near the female passenger's feet when she exited the van. She reported that she purchased the Sudafed for defendant. She also said that defendant and Erik had been smoking methamphetamine while defendant was driving. Moreover, when Erik exited the van, he dropped a pipe that the officer believed was used to inhale methamphetamine. Methamphetamine was also discovered on Erik's person. Finally, defendant had a warrant for retail fraud. Given all the foregoing factors known to the officer and the time he began his search of defendant's van, there was a substantial basis under the totality of the circumstances, and thus probable cause, to conclude that the officer would discover illicit drugs in defendant's van. *Garvin*, 235 Mich App at 104. Accordingly, we hold that police had probable cause to search defendant's van. As a consequence, and contrary to defendant's assertions on appeal, no violation of the Fourth Amendment occurred.[1]

As to defendant's contention on appeal that his statements should have been suppressed, it is somewhat difficult for us to ascertain exactly what statements defendant alleges were subject to suppression. What follows is the entirety of defendant's argument on this issue:

> As seen on the patrol video, Mr. Swank exited his vehicle and was placed in handcuffs. Defendant was detained for suspicion of operating under the influence. He was given a preliminary PBT. Following these results, he was placed in the

---

[1] The parties also submit arguments pertaining to the legality of the search pursuant to the search incident to arrest exception and the inventory search exception. However, a search only needs to be valid under one of the exceptions to the warrant requirement. See *Davis*, 442 Mich at 10. Therefore, because the search was valid under the automobile exception, this Court need not address whether the search was valid under any other exception.

back of a patrol car while handcuffed. Defendant was not free to leave and not given his Miranda warnings. In *Miranda v Arizona*, 384 US 436, 444-445 (1966), the United States Supreme Court held that the prosecution must present evidence that the defendant voluntarily, knowingly, and intelligently waived his privilege against self-incrimination and rights to consult with counsel to have counsel present during a custodial interrogation. Any statements that Mr. Swank made such as advising the officer that he had something to drink, should have been suppressed.

Though defendant argues that "[a]ny statements that Mr. Swank made . . . " are subject to suppression, defendant only cites to his statement to the arresting officer that he had been drinking. Hence, we surmise that statement to be the only statement defendant alleges is subject to suppression as a violation of his rights under *Miranda*.[2]

This Court has explained that "*Miranda* warnings are not required unless the accused is subject to a custodial interrogation." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011). Further, it is well-settled that "a motorist detained for a routine traffic stop or investigative stop is ordinarily not in custody within the meaning of *Miranda*." *Id*. at 317.

At trial, the arresting officer testified that defendant made the statement about drinking whiskey while he was speaking to him through the driver's side window as he was checking defendant's paperwork. Defendant did not object or challenge this testimony. On appeal, defendant does not argue that the officer did not have reasonable suspicion to effectuate a stop or that any of the officer's actions leading up to defendant's initial detention were constitutionally infirm. Hence, we must conclude that at the time the officer solicited defendant's statement that he had been drinking, defendant was subjected to a permissible investigative stop pursuant to *Terry v Ohio*, 392 US 1, 21, 30-31; 88 S Ct 1868; 20 L Ed2d 889 (1968).

As previously stated*, Miranda* warnings are not required unless the accused is subject to a custodial interrogation. *Steele*, 292 Mich App at 318. Here, defendant was temporarily detained in order for the officer to make a reasonable inquiry into possible criminal activity. The officer's questions were asked immediately after the stop, and were done in an effort to confirm or dispel the officer's suspicions as to whether defendant was driving while under the influence of alcohol. Accordingly, because defendant was questioned while subjected to a lawful *Terry* stop, he was not "in custody" as required for a *Miranda* violation and accordingly is not entitled to relief. *Steele*, 292 Mich App at 316. See also, *Berkemer v McCarty*, 468 US 420, 437-440; 104 S Ct 3138; 82 L Ed2d 317 (1984); *People v Burton*, 252 Mich App 130, 138-139; 651 NW2d 143 (2002).

Defendant also asserts on appeal that the trial court erred in allowing the pharmacist from Walgreens to testify because the prosecution did not add her to the witness list until 15 days before trial. There is no dispute that the prosecution failed to comply with MCL 767.40a(3). The

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

pharmacist's testimony concerned the female passenger's purchase of Sudafed from the Niles Walgreens and the law involving the National Precursor Log Exchange (NPLEx).[3]

This Court reviews a trial court's decision whether to allow the late endorsement of a witness for an abuse of discretion. *People v Callon*, 256 Mich App 312, 325-326; 662 NW2d 501 (2003). In pertinent part, MCL 767.40a provides:

> (3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

> (4) The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties.

MCR 6.201(A)(1) states that a party must provide

> the names and addresses of all lay and expert witnesses whom the party may call at trial; in the alternative, a party may provide the name of the witness and make the witness available to the other party for interview; the witness list may be amended without leave of the court no later than 28 days before trial.

This Court has held that "[m]ere negligence of the prosecutor is not the type of egregious case for which the extreme sanction of precluding relevant evidence is reserved." *Callon*, 256 Mich App at 328. "Moreover, to establish that the trial court abused its discretion, defendant must demonstrate that the court's ruling resulted in prejudice." *Id*.

The record reveals that the prosecutor assigned to his case dealt with medical issues before trial, which could constitute good cause pursuant to MCL 767.40a(4). Further, even if this Court were to presume a lack of good cause, defendant has not demonstrated prejudice resulting from the trial court's ruling. See *Callon*, 256 Mich App at 328. The pharmacist did not provide any novel testimony. She testified that she sold Sudafed to a woman on May 24, 2017, at 1:30 a.m. She also explained that both defendant and Erik would have been blocked from purchasing Sudafed. However, this information was already provided by other witnesses. The arresting officer testified that he observed a woman exit defendant's van in the Walgreens parking lot and then reenter the van after leaving Walgreens. He discovered a box of Sudafed in a Walgreens bag near where this passenger was sitting in the van. Dispatch also confirmed that a

---

[3] The NPLEx is an electronic logging system that tracks sales of over-the-counter medications containing pseudoephedrine (such as Sudafed), because those medications are used for the manufacture of methamphetamine. The NPLEx system blocks an individual from purchasing a product with pseudoephedrine if the individual attempts to purchase more than the 9-gram limit in a 30-day period. The system showed that both defendant and Erik were blocked from purchasing Sudafed on the night in question because they had both reached the 9-gram purchase limit.

woman had just purchased Sudafed at the Niles Walgreens. Moreover, a detective provided extensive testimony regarding the NPLEx logs before the pharmacist was called to testify.

Additionally, defendant was aware of the pharmacist and her possible testimony almost three months before trial. On appeal, defendant does not explain how he was unable to prepare for her testimony or how receiving notice 30 days before trial would have made a difference in his preparation. Defendant was also able to cross-examine the witness at trial. Under the circumstances, the trial court did not abuse its discretion in allowing the witness to testify. See *id*. at 326 (concluding "that the trial court did not abuse its discretion by allowing the late endorsement of a critical prosecution witness where the witness was known to the defense, had been subjected to cross-examination at the preliminary examination, and where no continuance was requested and no unfair prejudice resulted to defendant"). Therefore, defendant has not shown that the trial court abused its discretion in allowing the witness to testify or that he was deprived of a fair trial. See *id*. at 328-329.

Next, defendant argues on appeal that the trial court erred in admitting improper character evidence pursuant to MRE 404(b). Although we agree that the trial court erred in failing to enforce the notice requirement of that rule, we conclude that the evidence was admissible and did not affect the outcome of defendant's trial.

MRE 401 states that "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In addition, MRE 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible."

At the time of defendant's trial, MRE 404(b) provided:[4]

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity,

---

[4] MRE 404(b) was amended, effective January 1, 2018. The current version of MRE 404(b)(2) states:

> The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

(2) The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only the defendant's privilege against self-incrimination.

Our Supreme Court has articulated the following test for the admission of other-acts evidence:

First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017) (citation omitted).]

At trial, defendant objected to the detective's testimony involving the NPLEx logs. He testified that the logs showed that defendant successfully purchased Sudafed on May 23, 2017. However, defendant had been blocked from purchasing on May 4, 5, and 7. Defendant would have been unable to purchase Sudafed on May 24, because he had reached the nine-gram limit for the 30-day period. The logs showed that Erik last purchased Sudafed on May 11, 2017. He also would have been blocked on May 24. The logs also showed that defendant and Erik often purchased or attempted to purchase Sudafed at the same place and time.

In regard to this testimony, defendant argued that the prosecution failed to provide proper notice that it was admitting propensity evidence. Defendant also argued that such evidence was irrelevant and that it was unfairly prejudicial. We agree with defendant that the evidence pertaining to the NPLEx logs concerning defendant's prior purchases of Sudafed constituted "other acts" as contemplated by MRE 404(b). Here, the charged conduct essentially stemmed from defendant's alleged manufacture and use of methamphetamine. Although Sudafed is an ingredient of methamphetamine, defendant was not charged with purchasing Sudafed or even asking his passenger to purchase Sudafed for him. See *People v Jackson*, 498 Mich 246, 265; 869 NW2d 253 (2015) ("The rule does not limit its reach to evidence of other criminal conduct, rather it expressly contemplates evidence of 'other crimes, wrong, or acts' that may give rise to an impermissible character-to-conduct inference."). Instead, this evidence was provided as support for the prosecution's assertion that defendant was obtaining more Sudafed than what was medically recommended in order to make methamphetamine, and that defendant asked his passenger to purchase Sudafed on May 24 specifically for that purpose.

Such a holding is underscored by the testimony of the detective who told the jury that law enforcement used the NPLEx system as an investigative tool to discover methamphetamine

laboratories. He also explained that defendant's NPLEx history showing two successful purchases, but multiple blocks in 30 days "would be a huge indicator for [law enforcement] investigating this." He further stated that "[t]he only time we ever see records like this is when they're associated with meth labs or for smurfing . . . ." He explained that "smurfing" was when an individual used someone else to purchase pseudoephedrine because they were blocked from making the purchase. He indicated that it was common with "meth cooks" because nine grams in a 30-day period was not enough.

However, the prosecution did not present evidence relating to the amount of Sudafed needed to produce the amount of methamphetamine discovered in defendant's van. Consequently, and contrary to the prosecutor's arguments on appeal, this testimony was not direct evidence of the charged offense. As a result, this evidence was subject to scrutiny pursuant to MRE 404(b). See *People v Engelman*, 434 Mich 204, 215-217; 453 NW2d 565 (1990) (explaining that, pursuant to MRE 404(b), the prosecution must "establish some intermediate inference, other than the improper inference of character, which is in turn probative of . . . the commission of the act").

In this case, the record shows that the prosecution failed to provide pretrial notice of its intent to introduce other-acts evidence at trial as required by MRE 404(b)(2). The prosecution did provide the NPLEx logs to defendant two months before trial; however, MRE 404(b)(2) also requires the prosecution to state the general nature of the evidence and its rationale for presenting the evidence. See MRE 404(b)(2).

The error arises from the trial court's failure to determine on the record whether the prosecution showed good cause for failing to provide pretrial notice of this evidence. As a result, the trial court erred in allowing the evidence relating to defendant's prior purchases of Sudafed. See *Jackson*, 498 Mich at 261. See also MRE 404(b)(2). However, such a finding does not end our analysis of this issue. We must next examine the record to determine whether defendant suffered "outcome-determinative prejudice from the prosecution's failure to follow, and the trial court's failure to apply, MRE 404(b)(2)." *Jackson*, 498 Mich at 279.

Our examination of the record leads us to conclude that defendant did not suffer outcome-determinative prejudice as a result of the failures by the prosecutor and trial court to adhere to the dictates of MRE 404(b)(2). First, the evidence was relevant pursuant to MRE 401 because it had a tendency to make it more probable that defendant possessed the one-pot methamphetamine laboratory in his van and did so with the knowledge and intent that it would be used to manufacture methamphetamine. See MRE 401; MRE 402.

Second, this evidence was offered for a proper purpose. The fact that defendant had been attempting to obtain illegal amounts of Sudafed showed that he had knowledge of the ingredients required to make methamphetamine, that he possessed and was attempting to possess more items necessary in the manufacture of methamphetamine, and that, with the other items found in his van, he intended to make methamphetamine. Hence, the complained of evidence was not "simply evidence of the defendant's character or relevant to his propensity to act in conformance with his character." *Jackson*, 498 Mich at 276 (quotation marks and citation omitted). Instead, this evidence was offered to counter defendant's theory that all the methamphetamine-

manufacturing components belonged to Erik and that defendant had no knowledge of the one-pot laboratory or methamphetamine discovered in his van.

Third, the evidence's probative value was substantially outweighed by the danger of unfair prejudice under MRE 403. The probative value was important to demonstrate defendant's knowledge and intent, and any resulting prejudice was not so unduly prejudicial as to require exclusion. See *id*. at 277. Accordingly, the evidence involving defendant's prior purchases of Sudafed was substantively admissible under MRE 404(b).

Finally, we are guided by our Supreme Court's observation in *Jackson*, 498 Mich at 280, where, similar to this case, the other evidence of defendant's guilt at trial was overwhelming. Even without the testimony involving defendant's purchases of Sudafed in May 2017, the prosecution provided testimony that a one-pot methamphetamine laboratory with methamphetamine was discovered in defendant's van. Moreover, defendant—a resident of Indiana—drove to a 24-hour Walgreens in Niles, Michigan at 1:30 a.m. to obtain Sudafed, a necessary component of methamphetamine. It appeared that defendant attempted to avoid police by exiting the Walgreens parking lot using an inconvenient driveway at the back of the building and by pulling into a random driveway before the officer could activate his patrol car's lights. The officer noticed that defendant appeared to be under the influence of methamphetamine. Defendant's blood test also tested positive for methamphetamine. Essentially, in considering the evidence proffered at trial and the entire record, the trial court's erroneous ruling concerning the NPLEx testimony was ultimately harmless and did not "undermine[] the reliability of the verdict . . . ." *Id*. Accordingly, although it was error for the prosecution not to provide reasonable notice of the prior-acts evidence, defendant has not demonstrated that this error was outcome-determinative. *Id*. at 278.

Defendant also contends on appeal that the trial court erred in denying his motion for a mistrial because the trial court improperly admitted the NPLEx logs. The decision of a trial court to grant or deny a motion for mistrial is reviewed for an abuse of discretion. *People v Gonzales*, 193 Mich App 263, 265; 483 NW2d 458 (1992). The trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014) (quotation marks and citations omitted).

As discussed *supra*, the admission of the NPLEx logs and testimony regarding those logs was relevant and admissible pursuant to MRE 404(b) regardless of the procedural error in admitting that evidence. Accordingly, defendant has not shown that admission to this evidence was unfairly prejudicial to him or impaired his ability to have a fair trial. See *id*. As a result, the trial court did not abuse its discretion in denying defendant's motion for a mistrial in this regard. See *Gonzales*, 193 Mich App at 265.

Defendant further argues on appeal that the trial court erred in assessing offense variable (OV 14) at 10 points. "Issues involving the proper interpretation and application of the legislative sentencing guidelines . . . are legal questions that this Court reviews de novo." *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016) (quotation marks and citation omitted). The trial court's "factual determinations are reviewed for clear error and must be

supported by a preponderance of the evidence." *Id.* (quotation marks and citation omitted). "[T]he application of the facts to the law[] is a question of statutory interpretation, which" this Court "reviews de novo." *Id.* (quotation marks and citation omitted).

MCL 777.44(a) provides that OV 14 should be assessed 10 points if the trial court finds that the defendant was a leader in a multiple offender situation. Otherwise, OV 14 should be assessed at zero points. MCL 777.44(b). According to MCL 777.44(b)(2):

> (2) All of the following apply to scoring offense variable 14:
>
> (a) The entire criminal transaction should be considered when scoring this variable.
>
> (b) If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader.

This Court has explained "that for purposes of an OV 14 analysis, a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017) (quotation marks and citation omitted). In this case, the evidence showed that defendant picked up Erik and their female passenger in his van and drove them to the 24-hour Walgreens in Niles at 1:30 a.m. The female passenger reported to police that she purchased the Sudafed for defendant. Although defendant seemingly argued at trial that it was his brother Erik who was manufacturing methamphetamine, Erik testified that he did not know the female passenger and that she did not purchase the Sudafed for him because he already had everything that he needed to make methamphetamine. Additionally, a pressure cooker containing a methamphetamine laboratory and methamphetamine was also discovered in defendant's van. Hence, evidence was introduced at trial that defendant drove from Indiana to Michigan at 1:00 a.m. to have a third party purchase Sudafed for him and, additionally, components used for making methamphetamine and methamphetamine was discovered in his vehicle. On this record, the trial court did not err in finding that "defendant gave direction or was otherwise a primary causal or coordinating agent" in the crime. See *id.* Accordingly, defendant is not entitled to relief on this issue.

Affirmed.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra